# CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT

OF THE

## STATE OF WISCONSIN.

---

### TENNEY VS. THE STATE.

CONSTITUTIONAL LAW: (1.) *Each branch of the legislature has power to employ clerks.* (3.) Quære, *whether ordinarily one house can employ legal counsel at the expense of the state.*

STATUTE CONSTRUED: (2.) *Power to employ a "competent clerk" does not authorize a legislative committee to employ legal counsel.*

RATIFICATION—ESTOPPEL: *Whether a certain appropriation act operated as a ratification of plaintiff's employment, or as an estoppel against the state.*

1. Under sec. 9, art. VII of the state constitution (which authorizes each house to choose its own *officers*), either branch of the legislature may employ *clerks* for its own committees, except as limited by the statute.

2. The assembly adopted resolutions instructing one of its standing committees to reduce into two acts all the general laws of the state relating to the assessment and collection of taxes, and to submit their report at the earliest practicable period; prohibiting the committee from making any material changes in the existing laws on these subjects except in certain specified particulars; and empowering them "to employ some *competent clerk* to assist them in the discharge of their duties." *Held,* that the person employed by such committee can recover only such compensation as is allowed by law to a *clerk* employed by the legislature, and cannot recover for skilled labor as a lawyer in aid of the committee.

3. LYON, J., is strongly inclined to the opinion that in the ordinary business of legislation (not including impeachment proceedings), a single branch of the legislature has no power to employ legal advisers, and bind the state to pay for their services as such; but it was not necessary to decide that question in this case.

4. After plaintiff had commenced a suit for the value of his legal services in aid of such committee, the legislature passed an act appropriating $150 to be paid him on signing a receipt in full for his services, and discontinuing said suit. *Held,* that this was a mere proposition for a settlement, and not having been accepted, does not operate as a *ratification* of the employment of plaintiff as a lawyer, or as an *estoppel* upon the state from denying such employment.

5. The amount to which plaintiff is entitled as such clerk is fixed by ch. 136, Laws of 1860, as amended (and *not* repealed) by ch. 58, Laws of 1868, at four dollars per day for the period of his employment.

MOTION for Judgment on Special Verdict.

The plaintiff moved for judgment in this court upon a special verdict found in the Dane circuit court. The case is stated in the opinion.

*H. W. & D. K. Tenney,* for the motion, argued that either branch of the legislature, in exercising the functions or performing the duties imposed upon it by the constitution (as in "compelling the attendance of its absent members," "punishing for contempt and disorderly behavior," "keeping a journal of its proceedings and publishing the same," etc.), may create a charge against the state in favor of the persons whom it employs for those purposes (*Briggs v. Mackellar,* 2 Abb. Pr. 30, 41, 56; *Falvey's Case,* 7 Wis. 630, 637, 638); and that it creates such charge simply as an agent, acting within the sphere of its agency, although, after the liability is created, and the right of action has accrued, it may require an act of *legislation* by both houses to appropriate the money from the treasury. The power of the house in the employment of the necessary agencies for the performance of its own functions being unlimited under the constitution, it cannot be taken away even by a law passed by both houses; for neither house can abdicate its constitutional power. 2. They further contended that under the provision (art. IV, sec. 9) which empowers each house to "choose its own *officers,*" each may employ any reasonable number of *clerks,* and assign them such duties as it pleases, and make the state liable to pay them such compensation as their services are reasonably worth. The word clerk was formerly an equivalent of *clergyman, scholar* or *skilled person,* and it retains a trace of that meaning yet. A clerk in a bank, a clerk in the patent office, a hotel clerk and a legislative clerk, are alike only in being *skilled persons,* but their skill is in

quite different things. The assembly probably used the word with the idea that a person competent to revise the tax laws might, for want of a better term, pass by that description. It could not have supposed that a common legislative clerk was competent to do the work required. It employed the plaintiff as a " competent clerk," and directed him to revise the tax laws. Will it be said that the house had no power to employ a competent clerk to prepare a bill requiring special skill and knowledge which none of the members possessed? Must they leave the law still in confusion, or make it worse by ignorant patchwork, because they had not power to procure a proper bill to be drafted? Is it constitutional to employ a clerk to copy laws after they are passed, but not to prepare them for passage? 3. If there was any want of authority to create this charge in the beginning, the state has since ratified it by passing an appropriation bill to pay for the work. The terms of the act recognize and adopt the employment, and the liability of the state to pay for the work. It was only the value of it, as claimed by the plaintiff, which the legislature did not acknowledge.

*The Attorney-General,* for the state. [No printed brief.]

LYON, J. At the annual session of the legislature for the year 1869, the assembly passed resolutions instructing the committee on the assessment and collection of taxes, which was one of the standing committees of that body, to reduce into two acts all the general laws of the state relating to the assessment and collection of taxes, and to submit their report at the earliest practicable period. The committee was prohibited from making any material changes in the existing laws on those subjects, except in certain particulars specified in the resolutions. One of the resolutions authorized the committee " to employ some

competent clerk to assist them in the discharge of their duties."

Pursuant to such authority, the committee employed *Mr. Tenney*, who performed the whole work contemplated by the resolutions. The bills prepared by him were accepted by the committee, and reported to the assembly. That the duty was admirably performed, no person who is acquainted with *Mr. Tenney* can doubt. His industry and legal acumen, and the special attention which he had given to assessment and collection laws, peculiarly fitted him for work of this character.

The legislature of 1870 appropriated to *Mr. Tenney*, upon certain conditions, $150 for such services, which he refused to receive, on the ground that it was not adequate compensation therefor; and thereupon he brought this action in this court, pursuant to ch. 157 of the Revised Statutes, to recover what his services to the state were reasonably worth.

This action was in fact commenced before such appropriation bill was passed; but the plaintiff and the attorney-general have stipulated that it shall be deemed to have been commenced when the amended complaint was filed, which was after the passage of such bill. They further stipulated that no objection should be raised by the state to the maintenance of the action, on the ground that the legislature had not refused to allow the plaintiff's claim before the action was commenced. And they still further stipulated, that if the plaintiff failed to establish a claim against the state to an amount exceeding one hundred and fifty dollars, judgment should go against the plaintiff for costs.

An issue of fact having been made by the pleadings, it was sent to the circuit court for Dane county for trial. On the trial of the issue in the court below, the jury, under the direction of the court, found a special verdict as follows:

1st. That the usual and customary wages per day, during the session of 1869, for clerks of committees of the legislature, was four dollars.

2d. That the plaintiff was employed as mentioned in the complaint, under his appointment, fifteen days.

3d. That a fair and reasonable compensation for such services—regarding the same as skilled or professional services—is nine hundred dollars.

The jury further assessed the plaintiff's damages at nine hundred dollars.

The record of the proceedings in the circuit court, including the testimony given upon the trial, has been returned to this court; and the plaintiff now moves for judgment against the state upon the verdict.

That the services of the plaintiff, considered as skilled or professional labor, are reasonably worth the sum assessed by the jury, the evidence on the trial in the circuit court abundantly proves; and if he is to be compensated therefor on the *quantum meruit*, this motion should be granted.

If, on the other hand, he can only recover the wages of a clerk of a standing committee, as the attorney-general claims, then the motion must be denied, if the law fixes the compensation of such clerk at four dollars per day. Gen. Laws of 1868, ch. 58. For such wages, together with the sum paid by him for copying, do not amount to one hundred and fifty dollars; and under the stipulation, as I understand it, this would defeat the motion.

The questions, therefore, to be decided are: Can the plaintiff recover any sum for his services; and, if so, can he recover on a *quantum meruit* as for skilled or professional labor? Or does the law restrict him to a specific sum?

The first point to be considered is, whether one branch of the legislature may employ clerks for its committees without the concurrence of the other branch. It seems to me that this power must be con-

ceded. The Constitution, Art. VII, sec. 9, authorizes each house to choose its own officers; and its clerks of all classes are in one sense officers. They are so in that they are "persons authorized to perform a public duty," which is one of the definitions of "officer." For the purposes of preserving the independence and promoting the efficiency of each house, I think that this provision of the constitution should receive a liberal construction, and that by virtue of it each house may employ as many clerks as it deems proper, unless restricted by law. At the time when the plaintiff rendered the services in question, there existed no such restriction; and it was therefore competent for the assembly to authorize its committee on the assessment and collection of taxes to employ a clerk.

The next question for consideration relates to the character of the employment. Did the resolutions of the assembly, by virtue of which the plaintiff was employed, authorize the committee to employ him as an attorney to aid the committee by legal advice in the discharge of the duties which the assembly had imposed upon it?

Much stress was laid in the argument upon the fact that the resolutions authorized the committee to employ a *competent* clerk; and it was urged with much earnestness that this language, considered in connection with the duties to be performed, indicates that the assembly intended to authorize the employment of something more than a mere clerk—that it intended thereby to authorize the employment of a person learned in the law, and fully competent to grapple with and solve all intricate and perplexing questions of law which might arise in the performance of those duties.

However necessary or valuable such legal services might have been to the state, and whatever may have been the understanding of members of the committee,

I find nothing in the language of the resolutions which warrants any such inference. It is fair to presume that had the assembly intended to authorize the committee to employ a legal adviser, it would have so stated, and would not have left that intention to be inferred from so slight a circumstance as the use of the term "a competent clerk." It appears to me that the use of the adjective in that connection does not change the character of the employment. The resolutions do not in terms authorize the employment of a "competent lawyer," or even a "competent person," but a "competent *clerk.*" The person employed must be *competent*, but he is still a *clerk.*

The language of the resolutions is so plain and unequivocal, and indicates so clearly the character of the employment, that there seems to be no room for the construction contended for.

We must hold, therefore, that the legal status of the plaintiff in respect to these services is that of the clerk of a standing committee of the assembly.

Holding these views, it becomes unnecessary to decide whether one branch of the legislature may employ legal advisers, and bind the state to pay for their services, without the concurrence of the other branch. But a few suggestions upon that question may not be entirely out of place.

In cases of impeachment, where the functions of the two branches are entirely distinct, and where the assembly prosecutes on behalf of the state, that body doubtless has the power to employ legal advisers, and to bind the state to pay for their services. But I should hesitate to hold that, in the ordinary course of legislation, one branch alone possesses that power. I have already expressed the opinion that each branch has power to choose its own clerks, and, unless restricted by law, to decide for itself how many it will employ. But attorneys, employed as such, stand upon a footing entirely different from that of clerks.

Wis. xxvii—50

The latter have to do only with the machinery of legislation, such as keeping the records of proceedings, enrolling and engrossing bills, and the like,—duties which the members of the legislative body are not chosen to perform. For these purposes they are absolutely essential to the progress of legislation, and have been constantly employed by legislative bodies from a very remote antiquity. Not so with legal advisers. They are not indispensably necessary to the progress of legislation. They are not usually and customarily employed, either by the legislature or by a single branch thereof; and when employed, as it is claimed the plaintiff was employed, to frame bills and compile laws, they are simply retained to do what the members of the body themselves were elected to do. The cases where such services are needed are exceptional, and the cases where they are employed are still more exceptional. Besides, the law makes the attorney-general the legal adviser of the legislature, or either branch thereof. R. S. ch. 10, sec. 52. The power to retain counsel is in no wise essential to enable either house fully to exercise the powers conferred upon it by the constitution; and, so far as I am advised, it has never been recognized by the legislature or courts of this state. Indeed, the attorney-general has called our attention to one instance where the power was in principle repudiated by the senate. It is unnecessary to discuss this question farther; but were it a vital question in this case, I am strongly inclined to the opinion that it should be held that the power to retain counsel in the ordinary business of legislation, and to bind the state to pay for legal services, is not vested in a single branch of the legislature.

But the plaintiff contends that if there was any want of authority to employ him in the first instance, the legislature ratified the action of the assembly and its committee by passing an appropriation bill to pay

him $150 for his work.    The act making this appro-
priation provides that the sum appropriated shall be
paid to the plaintiff " on his signing a receipt in full
for such services, and withdrawing from the court his
suit·in relation to the same, now pending."

The legislature here says to the plaintiff, in sub-
stance, "If you will withdraw the action you have
commenced against the state for these services, and
execute a receipt in full therefor, the state will·give
you one hundred and fifty dollars."   It is a mere
proposition for a settlement, and it is quite clear that
such a proposition, unaccepted, operates neither as a
ratification nor as an estoppel.

Having held that the plaintiff was legally em-
ployed, and that the character of his employment
was that of a clerk of a standing committee of the
assembly, the only remaining question to be decided
is, What compensation is he entitled to receive for
his services ?

If· there was any law in force at the time the
plaintiff was so employed, fixing the compensation of
such clerks, that law, of course, must control the
amount to which the plaintiff is entitled.   *Massing v.
The State*, 14 Wis. 502.

We think that there then was and still is such a
law in force in this state.    That law is found in chap.
136, Gen. Laws of 1860, as amended by chap. 58, Gen.
Laws of 1868.    It is true that in the amended act the
word "annually" was omitted from the appropriation
clause, the same being in the original act, but this
was doubtless an inadvertence, and there is nothing in
the language of the amended act from which it can
be inferred that the same should only be applicable to
a single session of the legislature.    Had such been the
intention of the legislature, it would doubtless have
repealed the law of 1860 entirely, and restricted that
of 1868 to the session of that year.    The object of
the law of 1868 evidently was to so amend that of

1860 that the pay of certain officers and employees should be increased, and that it should provide for paying certain employees who were not included in the original act, and not to repeal the law. And it is understood that the auditing and disbursing officers of the state so regard it, and act under it as a valid and an existing law.

The law of 1860, as amended, fixes the per diem of a clerk of a standing committee at four dollars; and we are of the opinion that the plaintiff has no valid claim against the state for any greater compensation for his services.

The sum to which he is so entitled being less than one hundred and fifty dollars, under the stipulation before mentioned, his motion for judgment upon the verdict must be denied, and the state must have judgment for costs.

*By the Court.*—So ordered.