GALE MANUFACTURING COMPANY VS. CRIBB.

*September 6 — September 19, 1882.*

*(1) Warranty construed. (2) Partial settlement of mutual accounts. (3) Court and jury.*

1. A certain warranty in a written contract for the sale of plows *held* to be co-extensive with the contract and applicable to all plows furnished thereon.
2. A partial settlement or adjustment of mutual accounts is conclusive only as to the matters embraced in it.
3. Upon the evidence in this case, *held*, that the question whether there had been a final settlement between the parties should have been submitted to the jury.

APPEAL from the County Court of *Milwaukee* County.

Action upon an account for plows sold to the defendant. The answer denies any indebtedness and sets up two counterclaims: one based upon a breach by the plaintiff of its contract of warranty of the plows, and containing a statement of various items of damage caused by such breach; the second alleging that the plaintiff shipped twenty-five cultivators to the defendant, for which the latter paid $10 each, the plaintiff agreeing to take back what the defendant could not sell; that he was unable to sell and had offered to return fifteen of said cultivators and that the plaintiff refused to take them back as agreed. The plaintiff replied, alleging among other things a settlement of all claims and demands between the parties, November 24, 1879, and a second settlement in July, 1880.

The contracts under which the plows were sold were introduced in evidence. The first was as follows:

" This agreement, made and entered into this 5th day of July, 1878, by and between the *Gale Manufacturing Company*, of Albion, Michigan, of the first part, and *George C. Cribb*, of Milwaukee, Wisconsin, of the second part, witnesseth that the said *Gale Manufacturing Co.* of the first part, for the consideration hereinafter mentioned, have this day bargained and sold to the party of the second part, the following described property, manufactured by the party of the first part, to wit: 30 No. 20 plows, with pointers, each $16.00 list; 30 No. 22 plows, with pointers, each $16.50 list; [etc., etc.] Full settlement to be made as above by cash and notes on or before December 1, 1878.

" The above plows are warranted to do good work.

" Said party of the second part further agrees to give his notes for all goods shipped him by the party of the first part, when requested to by the party of the first part, payable at Houghton Bros.' Bank, at Milwaukee, Wis.

" Said party of the second part further agrees to order of said *Gale Manufacturing Company* of the first part, as many plows, etc., as the trade in the territory herein mentioned will demand, and pay for the same at prices and terms as noted herein, said plows, etc., to be delivered on board the cars at Albion, Michigan, said party of the second part to pay all freight and charges on the same.

" Said party of the first part does hereby grant to said party of the second part the exclusive right to sell the above named goods in the following territory, and no other, viz., the state of Wisconsin.

" And the party of the first part reserves to itself the right to revoke this contract, at any time, if the party of the second part shall fail to discharge any of their obligations entered into as above.

" Said party of the first part shall not be liable to damages

if, by reason of accident or any cause, they should not be able to fill all orders sent by the party of the second part.

"This contract not to be binding and in force longer than January 18, 1879."

The second contract was dated January 23, 1879, and was similar in terms to the first. The correctness of the plaintiff's account was admitted on the trial. The view taken by this court of the evidence relating to the counterclaims will appear from the opinion.

The county court directed the jury to return a verdict for the plaintiff. A motion for a new trial was denied, and the defendant appealed from a judgment on the verdict.

*Chas. M. Bice,* for the appellant.

For the respondent there was a brief by *Finches, Lynde & Miller,* his attorneys, and *W. P. Lynde, Jr.,* of counsel, and oral argument by *Mr. W. P. Lynde, Jr.*

COLE, C. J. The point was made on the argument that the clause in the first contract, "the above plows are warranted to do good work," did not refer to any other plows than those first shipped and enumerated in the agreement. But to our minds it is very clear that the warranty covered all plows which were furnished on the contract. The agreement manifestly contemplated orders for, and shipments of, plows from time to time, as the demands of trade in the territory designated should require. The time and manner of payment for plows delivered on the contract are specified. There would be as much reason in restricting the conditions of payment to the first plows shipped on the contract as there is for confining the warranty to that lot. We have no doubt but the warranty is co-extensive with the agreement, and applies to all plows which were furnished on the contract. Any other construction would be unreasonable, and contrary to the plain intent of the parties. It follows from this view that the plaintiff is liable for all damages arising

from the breach of its warranty, unless those damages have been adjusted by settlement.

The counsel for the plaintiff insists that the evidence clearly established the fact that all claims and demands growing out of the contracts in question, including the damages for defective plows delivered, had been adjusted; and he says that this settlement is final and conclusive until impeached for mistake or fraud. Counsel on the other side does not controvert the correctness of the proposition that a full settlement or final adjustment of mutual accounts is conclusive in law as to all matters included in the settlement; but he insists no such settlement is shown to have been made in this case. On the contrary, he argues that evidence was offered which tended to prove, and from which the jury might have found, had the question been submitted to them, that there had only been a partial settlement of the claims of the parties growing out of the contracts, and that there were many matters which had never been adjusted. Therefore, he complains of the refusal of the court below to allow the defendant to give testimony to prove that the matters set up in the counterclaims were not embraced in any settlement. On this branch of the case the court did, in effect, rule that the defendant might give evidence as to whether there had been a settlement of all claims growing out of the contracts, or whether there was not some claim omitted which was not included in the settlements made; but he effectually deprived the defendant of the benefit of such testimony by instructing the jury, finally, that upon the undisputed evidence the plaintiff was entitled to recover. This direction was given the jury, in the face of the positive testimony of the defendant that he had never had a final settlement with the company, and that the demands set up in his counterclaims were not embraced in any settlement.

As to the demand mentioned in the second counterclaim, relating to the cultivators which the plaintiff refused to take

back, when tendered, there is really no evidence that it was included in the partial settlement made in July, 1880. Indeed, in respect to both settlements mentioned in the case, the defendant says they were not intended to be final, because it was impossible at the time to make them so, there being many defective plows out, which had not been returned. By the terms of the order for the cultivators, the plaintiff was bound to take back all which the defendant could not sell, and it appears he was unable to dispose of all sent to him. Now, in respect to the evidence relating to this claim, it is certainly incorrect to say no case was made for the consideration of the jury. And in respect to the matters set up in the first counterclaim there are surely some items which the defendant should have allowed him, providing he could satisfactorily show they were just claims, and had never in fact been settled or adjusted. Hence we think the court erred in not allowing the defendant to show that there had been no final adjustment of all claims growing out of the contracts, and in refusing to submit that question to the jury upon the evidence adduced. For if, as the defendant proposed to show, there had only been a partial adjustment of these matters, of course he could enforce a claim which had not been included in a settlement. A partial settlement would only be conclusive as to the matters embraced in it. Upon the whole case, the question whether there had been a final settlement of the claims arising on the contracts should have been submitted to the jury, with all competent evidence which the parties could adduce relating thereto. As this was not done there must be a new trial.

*By the Court.*— The judgment of the county court is reversed and a new trial ordered.