Winkler and another vs. Patten and another.

*March 19 — April 4, 1883.*

Sale of Chattels. *(1) Warranty. (2) Offer of compromise: Estoppel.*

1. A representation that goods offered for sale as "good bagging and gunnies" are far superior to any Chicago and Milwaukee packings, and worth 2½ cents per pound, is a warranty of quality, and applies to all such goods furnished upon an order given in response to such offer.

2. Vendees of goods, claiming a breach of warranty of the quality thereof, proposed as a compromise the payment of a sum less than the purchase price and remitted that sum, with such proposition, to the vendors. In an action by the vendors to recover the balance of the purchase price, *held* that, notwithstanding such offer and remittance, the vendees may recover, upon a counterclaim, the full amount of their damages suffered by reason of the breach of warranty.

APPEAL from the County Court of *Winnebago* County. Action to recover a balance of $75.56 alleged to be due upon a sale of paper stock. The answer does not deny any of the allegations of the complaint, but alleges, by way of counterclaim, breaches of warranties as to the quality of the stock. The cause was tried by the court without a jury. A sufficient statement of the evidence will be found in the opinion. From a judgment in favor of the defendants for $75 and costs, the plaintiffs appealed.

The cause was submitted for the appellants on the brief of *Silas Bullard*, and for the respondents on the briefs of *Hooper & Berry*.

COLE, C. J. The litigation in the court below seems to have been confined to the counterclaims. In the counterclaims, the defendants, in effect, allege that the plaintiffs, in making sale of the merchandise to them, warranted the same to be good gunnies — far superior to any Milwaukee or Chicago packings — and that the goods were not as represented. They claimed they were damaged in the sum of $200, in consequence of the inferior quality of the goods.

The undisputed testimony shows that the plaintiffs, when they offered the goods to the defendants for sale, represented them to be "good bagging and gunnies, . . . far superior to any Chicago and Milwaukee packings," and worth two and one half cents per pound, and the finding of the county court is in accord with the evidence. There can be no doubt that this representation amounted to a warranty of the quality of the merchandise upon which the defendants had the right to rely. The learned counsel for the plaintiffs does not seriously question the correctness of this proposition of law, when applied to the first car-load of bagging, but insists that the warranty did not extend to the second carload. This position we deem untenable. It appears the defendants, on the receipt of the plaintiffs' letter of August 21,

1880, ordered a car-load of their bagging. On this order the plaintiffs sent two car-loads. But it is obvious the warranty extended to all the goods which they saw fit to furnish on the order; for the goods were all sent pursuant to that order alone, so the warranty must be held co-extensive with the contract. *Gale Manuf'g Co. v. Cribb*, 55 Wis., 414. And it is apparent from the complaint that the plaintiffs understood that the goods were all sold and delivered under one contract, which was according to the facts as established by the evidence.

The court below found that the merchandise was not of the value nor quality represented by the plaintiffs, but was of an inferior quality. The testimony overwhelmingly sustains that finding. All the witnesses who testified on the subject said the stock was poor, damaged, and not as good as Chicago and Milwaukee packings. Indeed, immediately upon the receipt of the first car-load the defendants notified the plaintiffs that they were disappointed in the bagging; stated that instead of its being superior to, it did not come up to, the common run of Chicago and Milwaukee stock. And this must be assumed to be an established fact in the case. The representation as to the quality of the merchandise was contained in the letter above referred to, and was to the effect that the bagging and gunnies were good, worth two and one half cents per pound, and far superior to any Chicago and Milwaukee packings. It was a positive, unequivocal representation, on which the defendants had the right to rely when they made their order, and was not a mere expression of opinion. The language was certainly sufficient to constitute a warranty, as is practically conceded by plaintiffs' counsel, in respect to the first car-load. The court found that the goods were only worth two cents per pound, and the evidence is quite conclusive that this was their full value.

The stock was in bales concealed from view; its condition and quality could only be ascertained upon examination after

the bales were opened. This fact distinguishes the case from *Locke v. Williamson*, 40 Wis., 377, and that class of cases where the defects in the property were obvious to the senses, and which the buyer would discover at once. But the defendants as soon as practicable made an examination· of the stock, and found it was defective. They notified the plaintiffs of that fact, and declined to receive it on the contract at the price of two and one half cents per pound. But the plaintiffs insisted that the stock was fully up to their representation as to quality, and refused either to make a deduction from the contract price or to take back the stock, unless it was returned to them at Cincinnati free of charge. To this unreasonable proposition the defendants declined to accede. So the matter stood for a few days, when the defendants sent the plaintiffs a draft on New York, for $603.77, together with bills of freight paid by them [amounting to $76.27], which was the price of the stock at two and one fourth cents per pound, proposing to settle the matter on that basis. The plaintiffs passed the amount to the defendants' credit, but requested that the balance of their bill, amounting to $75.76, be remitted at once, saying that under no circumstances would they make any deduction from the contract price. This suit was brought to recover the balance due at that rate. The defendants, however, recovered $75 damages under their counterclaims.

The plaintiffs' counsel insists that, as the defendants made a voluntary and unconditional payment of $680.04 on the account — reserving a balance of $75.76, estimating the stock at the contract price — under no possible circumstances can they do more than defeat the action. He says the defendants fixed their damages at the amount reserved after they had examined the stock and knew its quality and value. Therefore, he says, the court should assume that their damages did not exceed that sum. It may be admitted that

Winkler and another vs. Patten and another.

this position would be sound if it was in harmony with the facts of the case; but the whole correspondence shows that the defendants made a proposition to settle the matter by paying for the stock at the rate of two and one fourth cents per pound.   But it was a mere proposition for a settlement and compromise, so as to avoid trouble and litigation.   But the proposition was not accepted by the plaintiffs, who insisted upon being paid according to the contract price. Therefore, under the circumstances, the payment made by the defendants should not be regarded as an admission on their part that the stock was really worth two and one fourth cents per pound, nor does it estop them from claiming all the damages they sustained by the breach of the warranty.   A proposition for a compromise and settlement, which is not accepted, operates neither as a ratification nor as an estoppel.   *Tenney v. State*, 27 Wis., 387.

The whole tenor of the correspondence between the parties shows that the remittance made by the defendants was conditional; that is, it was an offer to settle the matter on that basis.   On the refusal of the plaintiffs to accept the offer the defendants wrote to them, saying: " Please return us the amount sent you and we will gladly give up your stock, less the amount paid for freight.   .   .   .   We are not trying to take advantage of you in the least.   Had your stock been as represented we should have been glad to have received it.   .      .   We shall make 'no more compromise. You will either take back your stock or accept what we have sent you as settlement."   The conduct of the defendants seems to have been frank, fair, and honorable, and to hold that they are concluded on the question of damages by the remittance and offer would be most unreasonable and unjust. They could have recovered all the damages which they sustained by a breach of the warranty, either in an action against the plaintiffs or when sued for the contract price. We therefore see no good reason why they should not re-

cover such damages upon the facts in this case. We lay no stress upon the stipulation between the parties that, if the defendants were entitled to recover in the action, they should recover $75. This stipulation, though in writing, and relied on by the county judge, is not signed by the parties or their attorneys. There may be some doubt whether it is binding under the rules of court, and no importance is attached to it. But upon the record we are clear that the judgment of the county court is correct and must be affirmed.

*By the Court.*— It is so ordered.