THE PEOPLE EX REL. CLEMENT V. SPRUANCE, AUDITOR, ETC.

THE PEOPLE EX REL. TUCKER V. SPRUANCE, AUDITOR, ETC.

1. Under the constitution the two houses of the general assembly cannot, by a separate resolution of each house, fix the compensation of their officers and employees at a higher rate than allowed by an existing statute.

2. The constitutional provision requiring that the legislature should provide by law the number, duties and compensation of its officers and employees, being a provision affecting public rights and essential to their due protection, should be held to be mandatory.

3. When a law has been duly enacted by one legislative assembly, in conformity with a mandate of the constitution fixing the number and compensation of legislative employees, a subsequent legislature may not legally ignore such law without modifying or repealing it.

4. A resolution providing that " all compensation in excess of that provided by law shall be paid from the contingent fund," etc., *held* to be in conflict with section 28, article V, of the constitution, for an additional reason, that it attempts to increase the rate of compensation after the services were rendered. And also *held* that, under section 32, article V, of the constitution, it is not within the province of the general appropriation bill to enact affirmative laws of this character.

5. The writ of *mandamus* should never issue unless the party applying for it shall show a clear legal right to have the thing sought by it, done in the manner and by the person sought to be coerced.

. MANDAMUS.

Messrs. R. H. GILMORE, A. E. PATTISON, C. G. CLEM-
ENT and L. TWITCHELL, for the relators.

THEO. H. THOMAS, Attorney-General, and THORNTON
H. THOMAS, for respondent.

· BECK, C. J.   These cases are applications of the re-
spective relators for writs of *mandamus* to the state
auditor, to compel him to audit claims alleged to be due
them from the state, and to issue warrants upon the
treasurer for the payment thereof.   The applications are
submitted upon an agreed statement of facts, and the
facts being substantially the same in both cases, as well
as the legal questions arising thereon, the cases may prop-
erly be considered together.

The relator Clement was appointed clerk of the judi-
ciary committee of the senate of the fifth general assem-
bly, on the 10th day of January, 1885, being the *fourth*
day of the session of said body, and served in that capac-
ity for the period of eighty-seven days.   The appoint-
ment was made by the chairman of said judiciary
committee, by virtue of a resolution of the senate
adopted on the *third* day of the session, authorizing said
chairman to employ such clerical assistance as, in his
judgment, was necessary.   He informed the relator that
his compensation would be fixed by resolution, at the
sum of $6 per day.   The relator served eighty-seven
days, and at the close of the session the senate, by reso-
lution prescribing the compensation of its officers and
employees for the session, fixed his compensation at the
rate of $6 per day, amounting in the aggregate to the
sum of $522.   The auditor, acting under the advice of
the attorney-general, audited a demand, on account of
said services, for the sum of $348, being at the rate of *four
dollars* per day, and issued a warrant upon the treasurer
for the payment of that sum, rejecting as illegal the bal-

ance of the claim, which amounted to the sum of $174. He now prays that the auditor be compelled, by a peremptory writ of *mandamus*, to issue a warrant for the last mentioned sum of money.

The relator Tucker was, by a resolution of the house of representatives, elected or appointed docket clerk of that body on the *first* day of its recent session, January 7, 1885, and served ninety days. On the 31st day of March, one week before the close of the session, the house adopted a resolution fixing the compensation of its employees, giving to the said Tucker $6.50 per day for the entire session, amounting in the aggregate to the sum of $585. Upon this claim the auditor allowed and issued his warrant for the sum of $420, leaving a balance claimed to be still due and unpaid of $160, for the allowance of which balance a like peremptory writ is prayed.

The position of the attorney-general, and his associate counsel, in respect to the action of the two houses of the general assembly, on the subject of these claims, is, that it was repugnant to sections 27 and 28, article V, of the constitution; and likewise in conflict with an existing statute on the subject, viz.: An act to prescribe the number, duties and compensation of the officers and employees of the general assembly, approved November 23, 1876. Gen. Stats. p. 523. That said employees became entitled to the compensation provided by said statute, and to no other or greater compensation. That the adoption of said resolutions were unconstitutional and illegal acts, and, being so, the fees therein prescribed are incapable of enforcement against the state.

The facts being conceded, we will proceed at once to the delicate duty of determining the law applicable thereto. To decide whether an act of the law-making assembly can be sustained, or must be declared void for repugnancy to the constitution, is always a delicate duty. It is one imposed, however, by the state upon the courts,

and must be performed with fidelity. "The constitution," says Mr. Cooley, "is the fundamental law of the state, in opposition to which any other law or any direction or order must be held inoperative and void." Cooley's Const. Lim. 56-7.

Whether the two houses of the general assembly can, by a separate resolution of each house adopted at or near the closing hours of their respective sessions, fix the compensation of their officers and employees at a higher rate than allowed by an existing statute, involves a question of constitutional law. A further inquiry is, whether a clause in the general appropriation bill, appropriating money to pay the excess of compensation above the amount prescribed by statute, obviates the constitutional difficulty. Section 27, article V, of the constitution provides as follows: "The general assembly shall prescribe by law the number, duties and compensation of the officers and employees of each house; and no payment shall be made from the state treasury, or be in any way authorized to any person, except to an acting officer or employee elected or appointed in pursuance of law." The regularity of the employment is conceded; so no question arises upon the latter clause of this section.

Respecting the first clause, the position is taken that it is directory merely, and that a failure to comply strictly with the provision is not fatal. This point was argued for the relators, largely upon the principles of statutory construction, and most of the authorities cited are of this character; for example, that a statute is directory when its provisions contain mere matter of direction, and nothing more. That when a statute directs certain proceedings to be done in a certain way, or at a certain time, and the form or period does not appear essential to the judicial mind, the law will be regarded as directory, and the proceedings under it will be held valid, though the command of the statute, as to form and time, has not been

strictly obeyed, the time and manner not being the essence of the thing required to be done.    Potter's Dwarris on Stats. p. 222, and note on p. 226.

These are sound rules of statutory construction, and if applicable to the construction of constitutional provisions, which in our judgment they are not, still the requirement that the legislature should provide by law the number, duties and compensation of its officers and employees, being a constitutional provision affecting public rights, and essential to their due protection, should be held mandatory.    Greater importance is to be attached to a provision of this nature when incorporated into the fundamental law than when enacted as a rule of statutory obligation only.    We think it was designed to be a peremptory direction to the general assembly.

Upon the construction of constitutional provisions of this character, Judge Cooley says: "The courts tread upon very dangerous ground when they venture to apply the rules which distinguish directory and mandatory statutes to the provisions of a constitution.    Constitutions do not usually undertake to prescribe mere rules of proceeding, except when such rules are looked upon as essential to the thing to be done; and they must then be regarded in the light of limitations upon the power to be exercised.    It is the province of an instrument of this solemn and permanent character to establish those fundamental maxims and fix those unvarying rules by which all departments of the government at all times shape their conduct.    *    *    *    If directions are given respecting the times or modes of proceeding in which a power should be exercised, there is at least a strong presumption that the people designed it should be exercised in that time and mode only."    Cooley's Const. Lim. 93.

Respecting the promise made to the relator, Clement, that $6 per day would be fixed by resolution of the senate, as pay for his services, every one is presumed to

know the laws of the land, and no advantage can be derived from a promise which necessarily involves a breach of the law. The statute of 1876, if applicable to the case, allows the relators each $4 *per diem*. It is argued that this act was not in force; first, because it was only designed to regulate the number, duties and compensation of the officers and employees of the first legislative assembly that convened under the constitution; and, secondly, because that body had no constitutional authority to pass a law which would bind a subsequent legislature. Authorities are cited to this point, but they do not sustain the proposition. They only go to the point that a legislature cannot enact irrepealable laws. 1 Cooley's Blackstone, 90.

The principle established by the authorities is illustrated in the case of *Wall v. State*, 23 Ind. 153, where it is held that the legislature cannot impose limits or restrictions upon its own future action, or say what a future legislature may or may not do. In this connection the court announces the well settled rule of law, that, when two statutes are inconsistent, the last enactment stands as the law. It would be an unwarrantable inference from the adjudications upon this point, to say that when a law has been duly enacted by one legislative assembly, in conformity with a mandate of the constitution fixing the number and compensation of legislative employees, that a subsequent legislative body could legally ignore such law without modifying or repealing it, or passing an act inconsistent with its provisions.

There is nothing in the suggestion that the first general assembly attempted, by the act referred to, to control the action of all future assemblies. On the contrary, the first sentence of the act refutes the proposition. It is as follows: " That until otherwise provided by law, the officers and employees of the respective houses of the general assembly of Colorado shall be as follows, to wit."

Such laws have been held valid and obligatory upon future legislative assemblies, even when their passage was not required by a constitutional mandate.

A statute of Wisconsin fixed the compensation of clerks of standing committees of the legislature at $4 per day. At the annual session of ·1869, the committee on the assessment and collection of taxes, being one of the standing committees, employed a lawyer to assist it in reducing into two acts all the laws of the state relating to the assessment of taxes. He refused to accept the statutory compensation of a clerk for his services, and brought suit to recover for skilled labor as a lawyer. The legislature passed an act appropriating $150 in payment for his services, which largely exceeded the pay of a clerk, but he rejected that also, as inadequate. He recovered a verdict for $900. Upon review in the supreme court it was held that the plaintiff was employed as a clerk, and entitled to recover only the pay prescribed by law for a clerk. That although this law was passed at a previous session of the general assembly, there being nothing in its language to indicate that it was intended to apply to a single session, it must be held to continue in force. *Tenney v. The State*, 27 Wis. 387. Reference is made in the foregoing case to the rule announced in *Massing v. The State*, 14 Wis. 502, that when there is a law in force at the time of the employment of a clerk, fixing his compensation, it must control the amount to which he is entitled.

It is contended in the present cases that each branch of the legislative assembly has the constitutional right to employ such clerical assistance as may be necessary to the convenient transaction of the business of the sessions, which includes authority to fix the rate of remuneration. And having assumed such authority at the late session, and issued certified vouchers of the amount due the officers and employees, it becomes the duty of the respondent

to audit the amounts certified, and to issue warrants upon the treasurer for their payment.

Opposed to this view is the consideration that the auditor is an officer, not only sworn to observe the law in the allowance and payment of claims, but the statute makes it a misdemeanor for him knowingly to pay an illegal claim. He cannot be compelled, therefore, to audit or issue warrants for the payment of illegal claims, no matter how they may be certified. The constitution having required the passage of a law fixing rates of compensation for such employees, and such law having been passed and remaining unrepealed among the state statutes, the auditor is bound to obey it as long as it remains in full force and effect. Such a law cannot legally be ignored for the resolutions separately adopted by the two houses of the late general assembly, giving a higher rate of compensation than that therein prescribed. The compensation must be fixed by a law. A resolution adopted by a single branch of the legislature does not comply with the constitutional requirement.

Another fatal objection to the resolutions is, that they attempt to increase the rate of compensation after the services were rendered. This fact also renders them obnoxious to section 28, article V, of the constitution, which provides as follows: "No bill shall be passed giving any extra compensation to any public officer, servant or employee, agent or contractor, after the services shall be rendered or contract made, nor providing for the payment of any claim made against the state without previous authority of law." The resolutions are in clear conflict with these constitutional provisions.

The section quoted is comprehensive. It includes all claims against the state, whether the rate of compensation has been prescribed by law, as in the present instance, or whether in obedience to law it has been fixed by contract. In either case a subsequent promise or

agreement to pay a higher rate is void.   An examination of the resolutions referred to develops the fact that at the time of their adoption both houses recognized the existence of a statute prescribing the rates of compensation, and that the object of the resolutions was to increase the rates therein given.

The house resolution contains the following provision: "All compensation in excess of that provided by law shall be paid from the contingent fund of the house of representatives." The corresponding provision in the senate resolution is: "All compensation in excess of that provided by law shall be paid from the legislative contingent fund."

The general appropriation bill contains two separate and distinct appropriations for the payment of the compensation in question; one for the payment of their statutory compensation, the other for the excess allowed by the resolutions. The first of the appropriations mentioned appropriates $24,500 "for the *per diem* of the officers, clerks, sergeant-at-arms, pages, janitors, interpreters, chaplains, doorkeepers, engrossing and enrolling clerks, or any other employee of the senate," and $29,700 for those of the house. Another portion of the bill appropriates $50,000 "for the contingent and incidental expenses of the fifth general assembly," and among the items enumerated as payable out of this fund are the following: "All expenses or vouchers authorized or provided for by resolution of either house of the fifth general assembly." This bill then, following the directions of the resolutions, appropriates money from one fund to pay the compensation provided by law; and from another fund to pay the excess over and above the legal compensation, awarded by the resolutions. The latter appropriation for payment of this increased compensation is clearly illegal.

But the point is raised in behalf of one or both the relators, that the compensation claimed is not to be con-

sidered *extra* compensation, nor the provisions made for its payment as obnoxious to constitutional objections, because the statute of 1876 provided neither the employment in question, nor the compensation to be paid therefor. The act does not attempt to enumerate every clerk that may be necessary for the business of each house, but provides for the employment of necessary clerks not named by resolutions of either house. It is not obligatory upon either house to employ all who are named, but such of them as are employed are entitled to the prescribed compensation and no other. No distinction is made by the act in the legal *status* of clerks and employees named, and those whose employment is authorized by resolution. The state alike provides for their employment and remuneration. Section 3 of the act gives to those whose employment is authorized to be made by resolution of either house, the same legal *status* as the rest. It provides that "officers and employees so appointed by either house, by resolution as aforesaid, shall be considered in all respects as holding by authority of law after being so appointed."

Upon a careful reading of the statute, it will be observed, first, that no authority is delegated either to the general assembly, or to the separate branches thereof, to prescribe by resolution or otherwise the compensation of any officer or employee therein authorized to be employed; second, that the compensation of every one whose employment is by either mode authorized is prescribed by the act. Those not specifically mentioned in connection with a prescribed *per diem* are included in the provision,—"and all other officers and employees provided for in this act, each $4 per day."

But in behalf of the claimants, it is said, the compensation claimed depends not only on the resolutions, but is likewise authorized by law, since the orders contained in the resolutions are substantially re-enacted in the general appropriation bill, and this being so, if the former

statute is supposed to conflict, it is modified by the more recent enactment.

It is unnecessary to mention all the legal objections arising upon this proposition. It has already been sufficiently answered. At the time of the employment of the relators a valid statute was in force, providing for their employment and prescribing what their compensation should be. All promises of greater remuneration were void as against the state. The resolutions purport to give increased or extra compensation, as appears from the phraseology employed, and the provision made for its payment, and this, too, long after the employment of the relators, and after most of the services had been performed. This attempt would have been unconstitutional if made by statute. The fact, therefore, that the resolutions are mentioned in the appropriation bill cannot give them vitality, or make valid an illegal and an unconstitutional act. The only reference made, in the general appropriation bill, to the resolutions, as in relation to the disposition of the contingent fund, and the only payment directed by the resolutions to be made out of that fund, so far as the relators are concerned, is, "all compensation in excess of that provided by law."

To avoid the constitutional dilemma concerning the extra compensation voted, it is gravely argued that one of the relators does not come within the official specification employed in section 28, not being a "public officer, servant or employee, agent or contractor." The fallacy of this argument is exposed by reading the two sections, 27 and 28, in connection with each other.

Section 27 requires the passage of a law which shall prescribe the "number, duties and compensation of the officers and employees of each house." This provision having been complied with, section 28, referring to the same classes of employees, prohibits further legislation which will interfere with that enacted under section 27: "No bill shall be passed giving any extra compensation

to any public officer, servant or employee, agent or contractor," etc.

Section 29, article II, of the constitution of the state of Ohio, provides that "no extra compensation shall be made to any officer, public agent or contractor after the service shall have been rendered or the contract entered into," etc.  A similar effort to the one under consideration appears to have been made in that state to give increased compensation to the officers and employees of the general assembly.   Ignoring the constitutional mandate, the senate of that state attempted, by resolution, to give extra compensation to the first and second assistant sergeant-at-arms, and the general appropriation bill appropriated $65,000 "*per diem* and mileage of the members of the general assembly, and *per diem* and mileage of the clerk, assistant clerk, sergeant-at-arms, assistant sergeant-at-arms, messengers, pages and other employees, under the laws and resolutions of the senate and house."   The auditor refused to issue warrants for the extra compensation thus awarded the first and second assistant sergeant-at-arms, on the ground that he was inhibited from so doing by the above constitutional provision.   Upon petition for *mandamus* to compel the auditor to issue the warrants, the supreme court, commenting upon the constitutional provision, say, among other things:   "This language is very broad, and was intended to embrace all persons who may have rendered services for the public in any capacity whatever, in pursuance of law, and in which the compensation for the services rendered is fixed by law," etc.   The compensation of the relators had been fixed by law at $5 per day.   A question appears to have been raised whether the relators were *officers*, within the meaning of the constitutional provision, and upon this point the court remarked:  "It is unnecessary to determine whether the relators, while acting as first and second assistant sergeant-at-arms, were or were not 'officers' within the strict mean-

ing of that word as usually understood. They were, while discharging their duties, serving the public at a fixed compensation, and were, therefore, whether they be regarded as statutory officers or as public agents, within the meaning of the first clause of the section, which inhibits them from receiving compensation after the services were rendered." *State v. Williams*, 34 Ohio St. 218.

Our conclusion upon the whole case is that the writs must be denied. The argument that the compensation claimed was provided by law, by reason of the provision made therefor in the general appropriation bill, adds no force to the claim. Aside from the principle that such compensation could not be legally given after the services were rendered, it is not within the province of the general appropriation bill to enact affirmative laws of this character. Section 32, article V, of the constitution says: "The general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the executive, legislative and judicial departments of the state, interest on the public debt, and for public schools. All other appropriations shall be made by separate bills, each embracing but one subject."

The framers of the constitution never contemplated that this bill would be used for the twofold purpose of creating laws and then appropriating money to carry them into effect. Affirmative legislation, as well as special appropriations, are otherwise provided for in the constitution.

The writ of *mandamus* is said to be a high prerogative writ which should never issue unless the party applying for it shall show a clear legal right to have the thing sought by it done in the manner and by the person sought to be coerced. It must not only be in the power of such person, but it must be his duty to perform the act sought to be done. *People v. Forquer*, Breese, 104; *People v. Hatch*, 33 Ill. 140; *Gruner v. Moore*, 6 Colo. 526.

The compensation given by law in these cases has been paid, and the increased or extra compensation attempted to be given being illegal, the auditor is justified in his refusal to audit and pay the same.

*Writs denied.*