Larson vs. The Aultman & Taylor Co.

LARSON, Appellant, vs. THE AULTMAN & TAYLOR COMPANY, Respondent.

SAME, Respondent, vs. SAME, Appellant.

*October 17 — November 7, 1893.*

(1) *Limitation of actions: Foreign corporations.*   (2–4) *Sale of chattels: Latent defects: Warranty by agent: Offer to return.*

1. A foreign corporation is a person "out of this state," within the meaning of sec. 4231, R. S., which provides that "if, when the cause of action shall accrue against any person, he shall be out of this state, such action may be commenced" within the time limited, after such person shall return to or remove to this state.

2. In an action for damages by reason of defects in machinery purchased, the evidence being conflicting as to whether the defects were patent, it was error to charge the jury that plaintiff, having purchased the machinery with full opportunity for inspection, could not recover on account of the defects.

3. Where it is shown to be the general custom for local agents selling mill machinery to warrant the same, the purchaser may recover from the principal for a breach of a warranty by the agent.

4. Where the capacity of machinery was unknown to the vendee and he bought it relying upon the warranty of the vendor, he may recover for a breach of the warranty, although he kept and used the machinery for some time after discovering its defective character or want of capacity, before notifying the vendor thereof or offering to return the machinery.

APPEALS from the Circuit Court for *Eau Claire* County. This action was commenced March 6, 1891, against the defendant, a corporation organized under and by virtue of the laws of Ohio. The complaint alleges, in effect, that July 31, 1884, at Menominee, Wis., the defendant sold and delivered to the plaintiff certain machinery to be used in and about the plaintiff's sawmill in Barron county, upon a warranty that the said machinery would do good work and be of good quality and capable of sawing from twenty-five to thirty-five thousand feet of pine lumber per day, and

be fit for the purposes of manufacturing lumber in the plaintiff's mill; that the plaintiff, relying upon said warranty, purchased said machinery; that said machinery was not of as good quality as warranted, nor capable of sawing any more than 10,000 feet of pine lumber per day; that a part of said machinery consisted of a second-hand rotary saw, which was old and worthless, and not of the kind ordered by the plaintiff; that after a fair trial the same was returned by the plaintiff to the defendant as not complying with said warranty; that the defendant received the same, and sent another worthless saw in lieu thereof; that by reason of the facts stated the plaintiff was damaged in the sum of $1,365; that the plaintiff had given the defendant on said purchase two negotiable promissory notes of $325 each, and that both of them had been sold by the defendant to innocent purchasers thereof; that the plaintiff had unsuccessfully attempted to defend against one of them, and was liable to pay both.

The answer consists of admissions and denials, and in effect alleges that the plaintiff kept and used the first saw named for several months, and by his own negligence burned and injured the same, and then returned it to the defendant and requested the defendant to send to him a Henry Disston fifty-two inch saw, fifty-two teeth, six by seven gauge; that at such request the defendant did order for, and cause to be sent to, the plaintiff, such Henry Disston saw, and directed him that if he should desire to return it he should do so directly to the makers, Henry Disston & Sons; that the machinery so sold to the plaintiff was examined and inspected by the plaintiff before purchasing, and was in good order and fit for sawing lumber; that the defendant had from the time of purchase, and ever since has had, and now has, agents in this state, conducting its business therein; that the pretended cause of action alleged arose in this state, and took place more than

six years prior to the commencement of this action, and is therefore barred by sec. 4222, R. S.

At the close of the trial the jury returned a verdict to the effect that they found against the defendant and assessed the plaintiff's damages at $145.08. From the judgment entered thereon accordingly, each party appeals to this court.

For the plaintiff there was a brief by *Wickham & Farr*, and oral argument by *James Wickham*. To the point that a foreign corporation cannot plead the statute of limitations, they cited *Olcott v. Tioga R. Co.* 20 N. Y. 210; *Rathburn v. N. C. R. Co.* 50 id. 656; *Bourdman v. L. S. R. Co.* 84 id. 157; *North Mo. R. Co. v. Akers*, 4 Kan. 453, 96 Am. Dec. 183; *Tioga R. R. v. Blossburg & C. R. R.* 20 Wall. 137; *Robinson v. Imperial S. M. Co.* 5 Nev. 44; *State v. Cent. Pac. R. Co.* 10 id. 47; *Thompson v. Tioga R. Co.* 36 Barb. 79; *Kirby v. L. S. R. Co.* 14 Fed. Rep. 261; *Blossburg & C. R. Co. v. Thompson*, 5 Blatchf. 387; *Winney v. Sandwich Mfg. Co.* 53 N. W. Rep. (Iowa), 421; Wood, Lim. of Act. 490.

*W. P. Bartlett*, for the defendant, to the point that a foreign corporation could plead the statute of limitations, cited *McCabe v. Ill. Cent. R. Co.* 4 McCrary, 496, 13 Fed. Rep. 827; *Express Co. v. Ware*, 20 Wall. 543; *Ex parte Schollenberger*, 96 U. S. 369–376; *Wall v. C. & N. W. R. Co.* 69 Iowa, 498; *Omaha & F. L. & T. Co. v. Parker*, 33 Neb. 775; *Bristol v. C. & A. R. Co.* 15 Ill. 436; *Bank of N. A. v. C., D. & V. R. Co.* 82 id. 495; *Penn. Co. v. Sloan*, 1 Bradw. (Ill.), 364; *Hass v. Cent. R. & B. Co.* 66 Ala. 472.

CASSODAY, J. It is conceded that the defendant is a corporation created and organized under the laws of Ohio. It exists only in contemplation of, and by force of, the law of that state. Since such law has, of itself, no extra-territorial force, the corporation cannot migrate to another state, but

must dwell in the state of its creation. *Bank of Augusta v. Earle,* 13 Pet. 588; *Ohio & M. R. Co. v. Wheeler,* 1 Black, 286; *Shaw v. Quincy M. Co.* 145 U. S. 449, 450. While it can only live and have its being in that state, yet its residence there creates no insuperable objection to its power to contract in other states, and having its legal existence recognized in such other states. *Ibid.* A suit against a corporation in a court of the United States is regarded as brought against its stockholders, all of whom are, for the purposes of jurisdiction, conclusively presumed to be citizens of the state in which the corporation was created. *Muller v. Dows,* 94 U. S. 444; *Railway Co. v. Whitton,* 13 Wall. 270; *Ohio & M. R. Co. v. Wheeler,* 1 Black, 286. Foreign corporations are not compelled to do business in this state. If they voluntarily choose to do so, however, they must submit to such conditions and restrictions as the legislature has seen fit to impose. *State v. United States Mut. Acc. Asso.* 67 Wis. 629; *Stanhilber v. Mut. M. Ins. Co.* 76 Wis. 291; *Paul v. Virginia,* 8 Wall. 181; *Philadelphia Fire Asso. v. People,* 119 U. S. 117; *Fritts v. Palmer,* 132 U. S. 282. The defendant, by voluntarily doing business in this state, thereby voluntarily submitted itself to the laws of this state. *Ibid.*

The learned counsel for the defendant contends that the plaintiff's cause of action is barred by the six years limitation prescribed by sec. 4222, R. S., as pleaded in the answer. Among the exceptions to that statute is the one which declares that " if, when the cause of action shall accrue against any person, he shall be out of this state, such action may be commenced within the terms herein respectively limited, after such person shall return to or remove to this state." Sec. 4231, R. S. The words, "if . . . he shall be out of this state," found in the exception thus quoted, have been construed by this court to apply to the mere temporary absence of a resident of the state. *Parker v. Kelly,* 61 Wis.

552. The opinion of Mr. Justice ORTON in that case, and
the adjudications there cited, seem to dispose of the ques-
tion suggested in the case at bar, if the defendânt is subject
to the same rule as a personal defendant. Speaking of the
clause quoted, as found in the New York Code, Mr. Chief
Justice FULLER, in a recent case, and commenting upon the
decisions in that state, in effect said that as to the statute
of limitation there were two exceptions to its operation,
and that one was "where the debtor was absent from the
state *when* the cause of action accrued," and that under
that exception mere " absence was sufficient to avert the bar,
because the statute did not commence to run until the re-
turn of the debtor into the state, and such return . . .
must be open and notorious, so that a creditor might, with
reasonable diligence, find his debtor and serve him with
process." *Barney v. Oelrichs,* 138 U. S. 534, citing *Engel
v. Fischer,* 102 N. Y. 404, where numerous other cases are
cited. In a more recent case, Mr. Justice GRAY, speaking
for the whole court, in respect to a similar clause in a Kansas
statute, said: "It was therefore rightly held by the circuit
court that the statute of limitations did not run while the
debtor was personally absent from the state, notwithstand-
ing that he continued to have a usual place of residence in
the state, where service of a summons could be made on
him." *Bauserman v. Blunt,* 147 U. S. 657. In that case
it was held that the construction given by the supreme court
of a state to a statute of limitations of the state would be
followed by that court. *Sanborn v. Perry, post,* p. 361.

But counsel further contends that a foreign corporation
is not a nonresident, in the sense that it cannot plead the
statute of limitations, and he cites adjudications to that ef-
fect. In *Tioga R. R. v. Blossburg & C. R. R.* 20 Wall.
137, it was held: "The highest courts of New York, con-
struing the statutes of limitations of that state, have de-
cided that a foreign corporation cannot avail itself of them;

and this, notwithstanding such corporation was the lessee of a railroad in New York, and had property within the state, and a managing agent residing and keeping an office of the company." 147 U. S. 654. See *Thompson v. Tioga R. Co.* 36 Barb. 79; *Olcott v. Tioga R. Co.* 20 N. Y. 210; *Rathburn v. N. C. R. Co* 50 N. Y. 656. Under our statutes, the word "person," as used in the clause quoted from sec. 4231, R. S., "may extend and be applied to bodies politic and corporate, as well as to individuals." Subd. 12, sec. 4971, R. S.

Such being the law applicable, it is obvious that the defendant was "out of the state" when the plaintiff's cause of action accrued, within the meaning of our statutes. We must hold that the plaintiff's cause of action is not barred by the statute of limitations pleaded. It follows that the exceptions of the defendant must be overruled, and that the judgment, in so far as it is questioned on the defendant's appeal, must be affirmed.

The question recurs whether any of the errors assigned in behalf of the plaintiff are available. The evidence on the part of the plaintiff tends to prove, in effect, that the machinery purchased by him of the defendant consisted of the tracks or a portion of them, the carriage with trucks, three head blocks with set works, a rack and pinion feed, a double rotary with boxes to it, a top-saw rig with belts, intermediate pulleys, and traction pulleys, and shaft with pinion on, one drive belt and two or three smaller belts, and two saws; that both the rotary and top saws were used for sawing logs, but the top saw was only to be used when the logs were so large that they could not be sawed with the other; that such other saw was to be a fifty-two inch Henry Disston saw, six by seven gauge, scant in thickness, fifty-two teeth; that the defendant's agent warranted the mill to cut from twenty-five to thirty-five thousand feet per day; that it was customary for local agents having the

sale of such machinery to warrant the same; that most of
the mill or machinery, including the arbor, was present
when the plaintiff made the purchase, July 31, 1884; that
the double rotary, the carriage, and what went with it, ex-
cept a pinion, were not there; that the machinery so present
appeared to be all right; that the machinery was put in
the mill in October; that the saw came about the middle
of November; that the mill started about November 20,
1884; that it commenced manufacturing lumber about De-
cember 1, 1884; that it would not or could not manufacture
heavy lumber; that something was always giving out; that
the arbor was right-handed instead of left-handed, that is
to say, the thread or screw was cut the wrong way, so that
the motion of the saw would loosen it instead of making it
more tight as it should; that the temper was out of the
saw, and that could be seen at once; that the second saw
had a flaw in it, and the teeth kept breaking; that before
December 24, 1884, the plaintiff notified the defendant's
agent that the saw would not work, but got no reply; that
December 27, 1884, the plaintiff returned the saw to the
agent of the defendant; that he ordered and received an-
other saw of the defendant, and that that was defective;
that he was compelled to have the arbor changed in the
particular mentioned; that the bearings of the trucks were
cast iron instead of steel, and failed to work properly; that
the plaintiff thereupon inquired of the defendant the price
of a new set, and, on being informed, bought a set cheaper
elsewhere; that he had to put wider pulleys on the shaft
of the feed works, and get new belts for the same; that
one pinion was all right, but the other was too small and
had to be returned with the saw; that the timber of the
carriage was pine, and painted, and the fact that it was not
hard wood was not, for a time, observed. That the plaint-
iff had in the mill other machinery, which he could not or
did not purchase of the defendant, including a rack and

pinion feed, edgers, and trimmers; that after the mill was repaired and the defects remedied the mill was incapable of manufacturing, on an average, more than 10,000 feet of lumber per day. Such is a general outline of the testimony on the part of the plaintiff. The essentials of that testimony are flatly contradicted by evidence on the part of the defendant, much of which is strongly corroborated by circumstances of a convincing character.

The court submitted the case to the jury on the theory that there was an implied warranty that the saw and arbor and pulleys, and some other parts of the machinery, were reasonably fit for the purpose for which they were purchased, unless the plaintiff knew of such defects at the time of purchase, and the verdict is based upon the defects so submitted. The court, among other things, charged the jury to the effect that it appeared from the evidence that the plaintiff's son was an experienced man in the operation of sawmills of this character; that all the parts, except the large saw, were at the time of the purchase open to inspection and examination by the plaintiff and his son who was acting for him, and that all such defects *were patent*,— that is, they were open and visible and would readily have been discovered by an experienced man in the business, upon inspection; that in such cases the law is well settled that the plaintiff is presumed to have purchased with knowledge, unless there was an express warranty by the defendant that the machinery was different in kind and material from what was apparent upon mere inspection; that in this case there was no such express warranty,— that is to say, there was no evidence to show that the mill was warranted to be of any different material or make than what it actually was. In the portions of the charge referred to, the learned trial judge was manifestly seeking to follow, and substantially did follow, the principles sanctioned by this court in *Locke v. Williamson*, 40 Wis. 377; *Morehouse v. Comstock*,

42 Wis. 626; *Olson v. Mayer*, 56 Wis. 551. As to such parts of the machinery as had no defects except such as were patent, the portion of the charge mentioned may be unobjectionable; but it may be doubtful whether the undisputed evidence was such as to justify the court in taking the question of latent defects and waiver from the jury, as to all the machinery except the large saw. The court did, however, take such question from the jury, and in effect expressly charged that the plaintiff having purchased the mill, as he did, with full opportunity for inspection, and having kept and used it for a considerable time after he had actual knowledge of its defective character, if it was defective, without complaint or offering to return it in the condition in which it was, he could not recover damages on account thereof. Under the evidence, we think this was misleading, and hence error.

The rulings of the court on the admission of evidence are upon the theory that the defendant's local agent who sold the machinery to the plaintiff had no authority to expressly warrant the same or any part of it; and a portion of the charge is to the effect that, under the testimony, there were great doubts whether the defendant ever warranted the mill to cut from twenty-five to thirty-five thousand feet of lumber per day, as the evidence tended to prove that the warranty, if made, was that of the agent merely. The rule is settled in this state that an agent employed to sell has no implied power to warrant, unless the sale is one which is usually attended with warranty. *Pickert v. Marston*, 68 Wis. 465. In the case at bar, there is evidence to the effect that it was the general custom of local agents to warrant such machinery, when selling it. Such being the law and the evidence, we must hold that such rulings of the court upon the contrary theory mentioned were erroneous, and that the portion of the charge referred to was misleading.

In the same connection the court further said to the jury, in effect, that it appeared from the evidence that the son, at the time of the purchase, expressed doubt as to the ability of the mill to saw the quantity named; that there was no special damage alleged as to the mill's inability to manufacture that quantity; that the testimony was too indefinite and uncertain to hold that it would not; that the number of hours contemplated to constitute a day was not stated, nor whether it would require a change of saws at intervals in the day, nor whether it was to be accomplished in connection with other machinery in the mill, such as edgers, trimmers, and like machinery; that it was common knowledge that the rotary sawmill was but a small part of a sawmill proper, and that the capacity of the mill depended largely upon the entire machinery, the class of logs, location, and experience, quickness, and number of men employed in all its departments. The indefiniteness and uncertainty mentioned may have called, and probably did call, for special instructions to the jury, thus narrowing the question down to just what, if anything, was covered by the alleged warranty; but they did not, as we think, authorize the judge to determine the question against the plaintiff, as a matter of law. The defendant's alleged warranty as to the capacity of the mill, as presented in the record, must be regarded as only applicable to the mill when operated under favorable circumstances and conditions. If the capacity of the mill was unknown to the plaintiff or his son at the time of the purchase, and the defendant actually warranted such capacity, and the plaintiff made the purchase relying upon the same, and there was a breach of the warranty, as alleged, then we perceive no reason why the plaintiff should be precluded from recovering his legitimate damages therefor, notwithstanding his failure to return or offer to return the mill or the defective parts, or to notify the defendant of such defects or want

of capacity. *Neave v. Arntz*, 56 Wis. 174; *Winkler v. Patten*, 57 Wis. 405; *Vates v. Cornelius*, 59 Wis. 615; *Buffalo B. W. Co. v. Phillips*, 67 Wis. 129; *White v. Stelloh*, 74 Wis. 435; *Barnes v. Burns*, 81 Wis. 232.

As the case must be retried upon a new theory and perhaps new evidence, we do not feel called upon to consider the important questions which may arise as to the proper measure of damages.

*By the Court.*— The judgment of the circuit court is reversed on the plaintiff's appeal, and the cause is remanded for a new trial.

