## CHARLES A. HARRINGTON *vs.* AUSTIN A. SMITH.

Worcester. Oct. 1. — Nov. 1, 1884. C. ALLEN & COLBURN, JJ., absent.

In an action for breach of warranty and for false representations in the sale of a steam-engine, the declaration alleged a warranty and a false representation that the engine was capable of yielding a certain horse power. It appeared in evidence that the defendant advertised the engine as of a particular make and of a certain horse power, and the plaintiff bought it after having it examined by an expert; and that manufacturers' ratings were not uniform, and were always below the horse power at which engines could be reasonably run. *Held*, that the plaintiff was not entitled to ask an expert as to what horse power was meant when an engine was advertised as of a certain horse power; and was not entitled to a ruling that it was a question for the jury whether the defendant did not by his advertisement hold out that the engine was of a certain power by the manufacturer's rating. *Held, also*, that the plaintiff had no ground of exception to a ruling that the engine must be capable of furnishing the horse power mentioned, without being strained or injured as a machine, and to a ruling that the jury must be satisfied that the representations made by the defendant were influential in inducing the plaintiff to make the purchase.

CONTRACT in two counts, with a count in tort. The first two counts were as follows:

"1. And the plaintiff says the defendant sold and delivered to the plaintiff one Putnam steam-engine for the sum of five hundred dollars, and warranted the same to be an engine of thirty-five horse power and capable of making and yielding such power, whereas said engine was not of thirty-five horse power and capable of making and yielding said power, but was of much less power, to wit, of only fifteen horse power, where-fore the plaintiff says the defendant has broken his contract of warranty; and the plaintiff, on discovering that said engine was

not as warranted, rescinded the contract, notified the defendant thereof, and demanded of him to take away said engine, and has since held the same subject to the defendant's order: wherefore the plaintiff is entitled to recover of the defendant the price paid by him for such engine, and other damages by him sustained by reason of the defendant's breach of contract.

"2. And the plaintiff says the defendant sold and delivered to the plaintiff one Putnam steam-engine for the sum of five hundred dollars, and warranted the same to be an engine of thirty-five horse power and capable of making and yielding thirty-five horse power: whereas said engine was not of thirty-five horse power and capable of making and yielding such power, but was of much less power, to wit of fifteen horse power, and the plaintiff is entitled to damages for the defendant's breach of his said contract of warranty."

The count in tort was as follows: "And the plaintiff says that he, being desirous to purchase a Putnam steam-engine of at least thirty-five horse power, applied to the defendant, who had an engine advertised as such for sale, to purchase, and told the defendant that he required an engine of at least that power; that the defendant falsely and fraudulently represented to the plaintiff that the defendant's Putnam steam-engine was an engine of thirty-five horse power, and the plaintiff, believing and relying on said false representation made by the defendant, bought said engine of the plaintiff, and paid him therefor the sum of five hundred dollars: whereas said engine was not an engine of thirty-five horse power, but of much less horse power and unfitted for the plaintiff's needs, all which the defendant well knew; all to the great damage of the plaintiff."

The answer denied any warranty; alleged belief on the defendant's part that the engine was capable of producing thirty horse power, and that the defendant so informed the plaintiff; averred that the plaintiff relied upon the examination and statement of an expert employed by himself; and that the engine was capable of producing the power which the defendant told the plaintiff it was capable of producing.

Trial in the Superior Court, before *Brigham*, C. J., who allowed a bill of exceptions, which, after stating that the pleadings were made a part thereof, proceeded, in substance, as follows:

The plaintiff offered evidence tending to show that the defendant advertised the engine in a newspaper as follows: " For sale cheap, 30 horse power Putnam engine; " and put in evidence a bill of parcels signed by the defendant, which described the article sold the plaintiff as " 1 Putnam engine; " that the term Putnam engine meant and was used by the parties to mean an engine of the make of the Putnam Machine Company of Fitchburg; that the engine in question was made by that company in 1860 for, and was sold as, a twenty horse power engine; that the commercial rating of an engine is the average power which the manufacturers make such engine to furnish safely, to advantage, and with economy, the " indicated " horse power is that which under different heads of steam the engine can do, running up to the maximum it can furnish, and the " effective " horse power is that which any given pressure of steam will furnish, in application to running machinery, &c.; that manufacturers' ratings are not uniform, but differ at different manufactories; and that such ratings are uniformly below the horse power at which engines can reasonably run.

The defendant testified that he had changed the cut-off of steam in the cylinder from cutting off at five eighths the length of the cylinder to seven eighths of said length, and evidence was introduced to show that the point of cut-off was that point where the direct pressure of steam, i. e. its admission into the cylinder, stopped and left the rest of the piston stroke to be made by the expansion of the steam admitted up to that point; that the change in the point of cut-off increased the horse power of the engine by continuing the direct pressure longer and reducing the space to be covered by expansion; that the increase of power so acquired was much less in proportion than the increase of steam used in making it, and therefore of the fuel used; that such increase of power was not economical, and that the fixing of the point of cut-off at seven eighths of the length of the cylinder, in slide-valve engines like this, was not practised by engine builders, including the Putnam Machine Company.

The defendant introduced evidence tending to show that he had informed the plaintiff's agent, and an engineer who was with him, of all he had done in altering the cut-off point in this engine to increase the power, before the sale was completed;

and on this and other evidence in the case, this, which was a controverted point, was, with the other issues of fact, submitted to the jury.

Evidence was also admitted to show that the plaintiff's agent took with him to Leominster, during the negotiations between the parties, an engineer, who, at the plaintiff's request, examined the engine, and reported favorably on it to the plaintiff. It was a controverted point whether this examination and report included an investigation of the capacity of the engine to furnish power or not, and it was also controverted whether the plaintiff made the purchase relying on the defendant's representations or not, the defendant contending that the plaintiff relied solely on the judgment of the said engineer. There was evidence tending to show that the engine in question ran under high pressure, as indicated by experiment, thirty-three horse power.

The plaintiff's counsel called to the stand an engine builder and dealer, whose qualifications as an expert in the building and selling of steam-engines was not questioned, and asked him the following question: "In case an engine is advertised of a certain horse power of a certain make, is there a universally understood meaning of the trade as to what horse power is referred to, that is, whether minimum, maximum rated, effective, or otherwise?" To this question the defendant objected, and the judge excluded it, but not on the ground that it was leading in form.

The plaintiff requested the judge to instruct the jury as follows: "It is a question for the jury in this case whether the defendant held out in his advertisement, and throughout the bargain, that the engine was a Putnam thirty horse power engine, and whether by such a representation he did not offer the engine as a Putnam thirty horse power engine at the manufacturer's rating." This ruling the judge refused to give; and upon this point instructed the jury as follows: "You must be satisfied that the engine sold by the defendant to the plaintiff was a practical thirty horse power engine, that is capable of furnishing thirty horse power without being strained or injured in its parts as a machine."

The judge instructed the jury on the question as to how far the plaintiff must have relied on the representations said to have

been made by the defendant as to the power of the engine, during the negotiations, in order to enable him to maintain his action, as follows : " You must be satisfied that the representations as to the capacity of the engine, made by the defendant to the plaintiff, induced him to make the purchase. They need not have been the sole inducement, but must have been influential in his making the contract. If the plaintiff purchased the engine upon his own judgment, after an inspection of the same by his agent, and upon that agent's report to him upon the engine, irrespective of the defendant's representations or advertisement, the plaintiff cannot recover." At the conclusion of the charge, the plaintiff's counsel called the attention of the judge to what he claimed to be the insufficiency of this instruction, in view of the fact that one ground of his action set forth in the pleadings was for a breach of warranty, contending that, if the jury found that the representations made were as claimed by the plaintiff and amounted to a warranty, such warranty was a part of the contract, and it need not be shown that he was influenced by such representations to make the purchase. The judge declined to change or enlarge his instructions on this point.

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*W. S. B. Hopkins*, for the plaintiff.

*H. C. Hartwell*, for the defendant.

DEVENS, J.    It is important to observe, in considering the exceptions in the case at bar, that the plaintiff does not, in either of the three counts of the declaration upon which he relied, allege the engine to be a Putnam engine, rated at a certain horse power, or one properly described as a thirty horse power Putnam engine. The first two counts, which are for breach of warranty, aver that the plaintiff sold the defendant a Putnam engine, and warranted the same to be of thirty-five horse power and capable of making and yielding thirty-five horse power; and that it was not of thirty-five horse power and capable of making and yielding such power. The third count avers that the Putnam engine sold to him was falsely represented by the defendant to be an engine of thirty-five horse power, by which we must understand capable of yielding that power; and that, relying upon this representation, the plaintiff bought the same.

When, therefore, the plaintiff sought to show that there was a difference between the rated or indicated power of an engine and its effective force, and that manufacturers rated their engines differently, so that an engine rated by the Putnam Company as of twenty horse power was in fact of much higher effective force, he was endeavoring to introduce a cause of action different from that which he had declared on in either count in his declaration. A horse power is a definite amount of mechanical force. The breach of warranty and false representation alleged by him were in regard to an engine possessing a certain mechanical force defined by the number of such powers, and not in regard to an engine which had been thus rated upon some artificial system understood between buyers and sellers, and from which rating the buyer had a right to understand that its effective force was much greater.

The question put by the plaintiff to an expert was properly excluded, for several reasons. The sale was not made upon the advertisement, but upon the personal examination which afterwards took place; and the object of the advertisement was only to call attention to the fact that there was an engine for sale. While also a term may acquire by commercial usage a peculiar meaning, which, when it is employed by those familiar with the subject, may be shown, yet this inquiry is different from that of the meaning which the trade may attribute to an advertisement. The more important reason for its rejection, however, is that its object was to show what was the proper rating of the engine, in connection with evidence that the commercial or manufacturers' ratings were always below the effective, reasonable running power of the engine; and this was irrelevant, as the plaintiff had not declared for any misrepresentation in this, but only in the effective capacity of the engine.

This consideration disposes of the first exception to the refusal of the presiding judge to give the ruling requested.

The plaintiff urges that the instruction given was in effect a ruling "that the phrase 'thirty horse power Putnam engine' was not a unity, a single phrase with a meaning understood by the parties, and held out as such by the defendant in his advertisement and throughout the bargain." The plaintiff had not called it such in either count of his declaration, or used this phrase as a

term descriptive of it, but a Putnam engine of thirty horse power or capable of yielding thirty horse power. That it was a Putnam engine, that is, made by the manufacturing company of that name, was not in dispute. When, therefore, the jury were instructed that they must be satisfied "that the engine sold by the defendant to the plaintiff was a practical thirty horse power engine, that is, capable of furnishing thirty horse power without being strained or injured in its parts as a machine," the instruction was appropriate to the plaintiff's declaration, and all that he had a right under it to ask.

The plaintiff also contends, — in view of the fact that one ground of his action set forth in the pleadings was for a breach of warranty, and his claim that, if the jury found that the representations made were as claimed by him, and amounted to a warranty, such warranty was a part of the contract, — that it need not be shown that he was influenced by such representations to make the purchase; and that the instructions were defective in thus stating to the jury. No evidence is set forth by the exceptions tending to show that there was any warranty in terms. Any affirmation as to the essential qualities of an article of personal property, made at the time of the sale thereof, is a warranty, and becomes a part of the contract, if the purchaser relies on it, and is thereby materially induced to make the purchase. The instructions permitted the plaintiff to recover, if such affirmations were proved and such reliance placed upon them. Without doubt, there may be a special warranty where a purchaser buys upon his own judgment, and yet for his own protection desires and obtains the benefit of it. Even if, in his own judgment, the article is not what it is represented, he may see fit to purchase it, and rely upon a special warranty that it is so. But such warranty must be made in explicit terms. To give force to the warranty that is inferrible from affirmation as to the essential qualities of the article sold, it is necessary that the truth of the thing affirmed should be relied upon to an appreciable extent. To this effect were the instructions given by the court. They did not distinguish carefully between the rules of law applicable to the case where an action is sought to be maintained upon the ground of false representations in tort and in contract for breach of warranty. This cannot have injured the

plaintiff, as they held the defendant to a responsibility for false or mere erroneous representations as high certainly as that to which he has ever been subjected.

*Exceptions overruled.*