Barnes vs. Burns.

BARNES, Appellant, vs. BURNS, Respondent.

*January 14 — February 2, 1892.*

*Sale of chattels: Warranty: Special verdict: Appeal.*

1. The vendee of a steam-boiler having examined it when it was tested, and having refused to take it under the written contract under which it had been manufactured for him, the rule of *caveat emptor* applies to his subsequent purchase and admits no exception by *implied* warranty.

2. But a statement of the vendor, relied upon by the vendee in making the purchase, that the boiler was fit and suitable for a purpose other than that for which it was made, was an *express* warranty.

3. In an action for breach of warranty by the breaking of a boiler, there being no finding in the special verdict that the breaking was the result of any defect covered by the warranty, a judgment for the defendant on the verdict cannot be held erroneous, where there is no bill of exceptions making the evidence a part of record.

APPEAL from the Circuit Court for *Winnebago* County. This action was brought to recover damages resulting to the plaintiff from the bursting of a steam-boiler which the

Barnes vs. Burns.

defendant had made and sold to him. The complaint alleges that the defendant was a manufacturer of steam-boilers to be used in generating steam, and as such entered into a written contract with the plaintiff, who is a machinist and manufacturer, to construct and manufacture, within a reasonable time, for $215, a steam-boiler of certain shape, size, etc., and strong enough to withstand a pressure of 150 pounds to the square inch; that the defendant delivered said boiler to the plaintiff, and he afterwards attached it to his machine-shop and engine-room, for the supply of motive power, and that soon thereafter while so in use, without fault or negligence of the plaintiff, it suddenly broke in pieces, by which it was rendered worthless; that it was not built in such manner or of such material as to bear the strain required when in use, or to stand 150 pounds pressure to the square inch, and at the time of its breaking it was under a pressure of only sixty pounds to the square inch. The plaintiff claimed other damages sustained in consequence of the breaking of the boiler.

The answer, admitting that the defendant was a manufacturer of boilers, and that the plaintiff was a machinist, etc., and the making of the contract, proceeds to allege that the boiler in question was made for the purpose of being used as a house boiler in the house of one Gates; that after it was completed, January 1, 1889, the plaintiff refused to take it, and the contract between him and the defendant was rescinded, the boiler remaining in defendant's possession as his own property; that plaintiff subsequently caused it to be tested, and that he examined it and purchased it upon his own knowledge and judgment; and denies that it was purchased under the contract set out in the complaint, and put in issue all its other allegations.

Upon a trial by jury it was found, by special verdict: (1) That the written contract made on the 3d day of November, 1888, was rescinded by the plaintiff and defendant.

(2) That the plaintiff refused to take the boiler when the last test was made, on the 3d day of January, 1889. (3) That the plaintiff was not advised by the defendant in September, 1889, that the boiler was unfit and unsafe to be used in his shop. (4) That the plaintiff did not know, nor ought he to have known, at the time he put the boiler in his new shop, that the boiler was unsafe. (5) That the defendant, about September 18, 1889, told the plaintiff that the boiler was fit and suitable to be used in plaintiff's machine-shop. In reply to the sixth question, "Did the boiler collapse by reason of the plates of the heads of the boiler being less than 5-16 of an inch?" answer, "Don't know." (7) That the boiler was not reasonably fit and suitable to set up in plaintiff's machine-shop. And (8) if the court should determine that the plaintiff is entitled to recover, the jury assessed his damages at $439.

The plaintiff applied for judgment in his favor upon the verdict, which was denied, and judgment was entered thereon for the defendant, from which the plaintiff has appealed. There is no bill of exceptions to show what testimony was given at the trial, or what instructions the court gave the jury.

For the appellant there was a brief by *Phillips & Kleist*, attorneys, and *Charles Barber*, of counsel, and oral argument by *M. C. Phillips* and *Mr. Barber*.

*Charles W. Felker*, for the respondent.

PINNEY, J. 1. The special contract set out in the complaint having been rescinded, leaving the boiler in question in the defendant's possession as his own property, that contract is eliminated from the case as a foundation for any recovery. The plaintiff is forced to and does rely only on the express warranty of fitness made after such test, in September, 1889, when the boiler was sold and delivered to him, many months after he had refused to take it, and

Barnes vs. Burns.

after the contract under which it was manufactured had been rescinded. It is found by the jury that the defendant represented at that time that the boiler was fit and suitable to be used in the plaintiff's machine-shop. It would appear from the second finding that the plaintiff had inspected or examined the boiler when it was tested, and that he refused to take it under the written contract so rescinded. This seems to be a fair inference from the findings; and, assuming it as true, the rule of *caveat emptor* would apply, and admit of no exception by *implied* warranty of quality. 2 Benj. Sales, § 966.

2. The law seems to be well settled that a positive representation with respect to the quality or fitness of property sold, made by the vendor and relied on at the time of the sale, amounts to a warranty; and effect ought to be given to a representation so made according to what the parties must fairly have understood by it. Any assertion by the seller to the purchaser during the negotiations to effect a sale, respecting the quality of the article or the efficiency of the property sold, will amount to a warranty if relied upon by the purchaser in making the purchase. *Smith v. Justice,* 13 Wis. 602; *White v. Stelloh,* 74 Wis. 438; *Neave v. Arntz,* 56 Wis. 176, and cases there cited. The representation found to have been made by the defendant to the plaintiff is, we think, within these authorities, an *express* warranty.

3. The difficulty with the plaintiff's case is that there is no finding to show that the breaking of the boiler and consequent damage was the result of any defect in the boiler covered by the warranty, for which the defendant was responsible. It may have been the result of the plaintiff's negligence in its use, or of an accident, or the result of defects known to the plaintiff at the time of purchase, or so obvious as to have been discoverable by careless inspection, and which would not be within the warranty. Story, Sales,

§ 354; *Buffalo B. W. Co. v. Phillips*, 67 Wis. 129.   In fact, there is no finding upon this material part of the case, showing what caused the breaking of the boiler and the consequent damages.   When the court below heard and denied the plaintiff's application for judgment, and rendered judgment in favor of the defendant, appealed from, it had before it all the evidence given on the trial, and its action must be considered as based on the record and *minutes of the trial.*   And while the existing practice in respect to special verdicts in cases where the verdict does not find on all the issues allows the court to supply such defects by acting on the uncontradicted evidence in the case in rendering judgment (*Munkwitz v. Uhlig*, 64 Wis. 380; *Weisel v. Spence*, 59 Wis. 301, and cases cited; *Hutchinson v. C. & N. W. R. Co.* 41 Wis. 541), the fact that there is no bill of exceptions making the evidence a part of the record renders it impossible for the appellant to maintain, or for this court to say, that the circuit court erred in refusing to give judgment for the plaintiff, or in rendering judgment for the defendant.   Error will not be presumed.   It must be shown affirmatively.   The presumption is in favor of the correctness of the action of the court below, until the contrary is shown by the record.   For these reasons the judgment of the circuit court must be affirmed.

*By the Court.*— The judgment of the circuit court is affirmed.