## AMANDA M. ELLIS, EXECUTRIX, v. C. W. RIDDICK.

ded January 13, 1904.

**1.—Sale—Warranty of Quality.**

A contract for the sale of future crops of sugar cane .to be raised on a farm for four years, at a price to vary with the market price of sugar, "said cane to be sound, ripe and merchantable," was a warranty of the quality of the cane to be so raised and delivered.

**2.—Same—Representation—Articles Not in Existence.**

A statement, in an agreement· for sale of articles to be thereafter produced, as to their quality, could not, as when used of things then in being, be considered a mere representation or expression of opinion.

**3.—Warranty—Inspection and Acceptance.**

Where there is an express warranty of quality on a sale, the purchaser, though having opportunity of inspection and being aware of the defect in quality, may receive the property and recover damages for the breach of the warranty.

**4.—Warranty—Executory Sale.**

An express warranty of quality may exist in connection with an executory contract for sale of an article to be produced in the future.

**5.—Same—Delivery—Price.**

A contract by which the seller was to deliver to the buyer, loaded on his tram cars at the sugar house, all the cane to be raised on a certain ·farm for four years, which he warranted should be of a certain quality, and the buyer agreed to take and pay for same at a price fixed with reference to the market price of a certain grade of sugar at the times of delivery, advancing certain expenditures for tram road and cars, did not bind such purchaser to pay the price named for cane accepted by him which did not come up to the quality warranted.

**6.—Same—Charge.**

A charge on the rights of a purchaser in case of failure of warranty as to quality, was properly refused where it ignored an issue presented in the case as to whether the failure in quality was due to a failure of the buyer to perform things undertaken by him in the contract.

**7.—Sale—Acceptance—Opportunity for Inspection.** ·

Evidence considered and held not to warrant a charge that acceptance of an article sold bound the buyer to the price promised, in the absence of a warranty of quality, because delivery appeared to have been complete and title to have passed before there was opportunity for inspection.

Appeal from the District Court of Travis. Tried below before Hon. R. L. Penn.

Riddick sued and had judgment against Ellis, executrix, who .appeals.

*Hogg, Robertson & Hogg,* for appellant.

*Hutcheson, Campbell & Hutcheson* and *West & Cochran,* for appellee.

KEY, ASSOCIATE JUSTICE.—C. W. Riddick brought this action against Amanda M. Ellis, as executrix of the estate of L. A. Ellis, deceased, seeking to recover for alleged breaches of a written contract; and from a verdict and judgment in favor of the plaintiff, the defendant has· appealed.

The contract referred to reads as follows:

"State of Texas, County of Fort Bend. Know all men by these presents that we, C. W. Riddick, party of the first part, and C. G. Ellis, agent of the estate of L. A. Ellis, deceased, party of the second part, witnesseth:

"1. The party of the first part is now the owner of what is known as the Klondyke plantation in Fort Bend County, Texas, and has in cultivation thereon sugar cane. That the party of the first part intends to cultivate 300 acres or more of said Klondyke plantation in sugar cane during the year 1900, and is to cultivate as much as 300 acres of said land in sugar cane during the term of four years beginning with the first day of January, 1900, and ending with the last day of December, 1904, and he has this day sold to the party of the second part the entire crop of cane to be grown by him on said Klondyke plantation for and during the period of four years, beginning as aforesaid, on the first day of January, 1900, and ending with the last day of December, 1904.

"And the party of the second part is to pay to the party of the first part, for said cane delivered at his (party of the second part's) mill in Fort Bend County, Texas, at the rate of eighty cents per ton for every cent that sugar known and classed as prime yellow clarified is worth in the market of New Orleans on the date of the delivery of said cane and at the rate for each fraction of a cent said class of sugar is worth. That is (to illustrate) if the said class of sugar in the market of New Orleans is worth on the date of the delivery of any of said cane four and one-half cents per pound, then the party of the first part shall receive for his cane so delivered the sum of three and 60-100 ($3.60) dollars per ton.

"And the party of the first part is to cultivate all cane in a good manner, and to cut, haul, and deliver cleaned as customary for cane to be cleaned for the mill, said cane to be sound, ripe and merchantable, for the price above mentioned, to the party of the second part at his mill. The party of the second part is to unload the tram cars at his own expense at the mill. And the said party of the first part also agrees to pay a certain indebtedness in sugar cane at the price above mentioned to the party of the second part. The said indebtedness referred to is an indebtedness heretofore due by the estate of Dr. Dillard and S. J. Winston of Fort Bend County, Texas, to the party of the second part, amounting to the sum of two thousand nine hundred and seventy ($2970) dollars. Said indebtedness is, however, to be paid in two equal installments, with interest at the rate of eight per cent per annum. First installment is to be taken out of the crop of cane for the year 1900, and the second installment is to be taken out of the crop for 1901. And the said amount representing said debts here referred to, is evidenced by two notes executed by the party of the first part, of even date herewith, to the party of the second part. And the party of the second part shall receive as payment for said indebtedness sugar cane at the rate above mentioned and under the terms of this contract. And the party of the first part is also to deliver said cane to the party of the

second part in a seasonable time for manufacturing it into sugar each fall, amount to be delivered by the party of the first part to the sugar mill of the party of the second part each day to be hereafter mutually agreed upon, said agreement to be governed by the estimated quantity of cane the party of the first part shall have to deliver.

"2.   The party of the second part hereby obligates and binds himself to receive from the party of the first part all of the cane raised by him on the said 300 acres or more of land cultivated on the Klondyke place in Fort Bend County, Texas, for and during the period of four years from and after the first day of January, 1900, and agrees to receive said cane at his sugar mill in Fort Bend County, Texas, and agrees to pay the party of the first part therefor 80 cents per ton for every cent, and every fraction of a cent in the same proportion, that sugar of the class known as prime yellow clarified is worth in the markets of New Orleans on the date of each delivery of such cane, and agrees to pay for said cane at the end of each week for the deliveries made during the week.

"And the party of the second part also obligates and binds himself to put down a tram road leading to the sugar mill of L. A. Ellis into the land to be cultivated by the party of the first part in cane, and agrees to extend said tram road to the center of the land so cultivated in cane by the party of the first part; the party of the first part agrees to furnish to the party of the second part the right of way through any and all lands which will be necessary to pass through after leaving the land of the party of the second part to reach the land of the party of the first part, free of all cost or charge to the party of the second part; said right of way to be a direct line as near as practicable, and he also agrees to maintain said tram road in good repair and also to furnish the party of the first part the necessary tram cars upon which the cane raised by the party of the first part can be loaded for delivery to the party of the second part at his mill.   And the party of the second part also further agrees to keep said tram road open and free of obstruction at all times during the harvesting season to enable the party of the first part to deliver said cane to the party of the second part without hinderance or interference.

"And the party of the second part shall maintain and keep in repair the tram cars furnished and to be furnished to the party of the first part for the delivery of said crop of cane, and agrees to have the cars unloaded at his own expense at the mill when so delivered, and in the quantity as delivered by the party of the first part.

"It is understood and agreed that in case of a destruction of the sugar house from fire or tornado or any action of the element over which the party of the second part has no control, the party of the first part agrees to release the party of the second part from the requirements of this contract until such a time that the party of the second part may rebuild the sugar house and again be ready for operation, and it is also agreed that, in case of a breakage of machinery, the party of the second part

has the right and privilege to stop the party of the first part from delivering cane until the necessary repairs can be made to again put the factory in operation. It is also agreed that the party of the first part can deliver his cane to the mill any day while the party of the second part is saving his own crop.

"And the party of the second part also agrees to receive in payment for the two notes executed by the party of the first part of even date herewith, cane at the price above mentioned, in payment of said notes. And if the party of the second part shall fail or refuse to comply with his part of this contract he shall not require the party of the first part to pay said notes in money.

"This contract shall be in force for and during a period of four years, and is executed in duplicate, each copy of which shall be considered an original.

"In testimony whereof, we have this day signed and sealed the same on this the first day of November, A. D. 1899.

(Signed)   "C. W. RIDDICK,

"C. G. ELLIS,

"Agt. for Estate of L. A. Ellis."

The plaintiff alleged in his petition that in pursuance of said contract he planted and raised a crop of cane on the farm referred to during the year 1901; and that, as authorized by the contract, he and the defendant entered into a supplemental agreement, by the terms of which the defendant agreed to furnish him during the harvesting season sixty tram cars, with which to deliver his crop of cane to the defendant; and he alleges a breach by the defendant of the agreement referred to, and damages resulting to him therefrom. He also sought to and did recover the contract price for some cane delivered to the defendant which had not been paid for. Some other claims are asserted against the defendant, which it is unnecessary to particularize.

The plaintiff alleged in his petition that all the cane delivered by him to the defendant was of the class and quality mentioned in the contract.

The defendant, in addition to her general denial, averred that the plaintiff obligated himself to deliver sound, ripe and merchantable cane, and that of the amount delivered, 329 tons were spoilt and entirely worthless, and 932 tons were not sound, ripe or merchantable, but were soured, spoilt and damaged, and worth only about one-half of what it would have been if in accordance with the contract.

There was testimony tending to sustain the latter plea. The trial court held, and so instructed the jury, that as the uncontroverted testimony showed that all the cane received and used by the defendant was received after full opportunity to inspect it, she was bound to pay for it according to the price stipulated in the written contract, unless there was a subsequent verbal agreement, as asserted by the defendant, modifying the written contract as to the price to be paid for damaged cane.

Counsel for the defendant requested an instruction predicated upon

the theory that the contract contained an express warranty by the plaintiff that the cane was to be sound, ripe and merchantable; and that if any of it was not such, then, although the defendant may have received the same without objection, the plaintiff would be entitled to recover therefor only the reasonable market value of such cane at the time and place of delivery.

*Opinion.*—Appellant's brief presents a number of questions for decision, none of which will be discussed in this opinion except the one predicated upon the action of the court in giving the one and refusing the other instruction as above stated. It is sufficient to say that the other questions have been duly considered, and it is not believed that they point out reversible error.

Perhaps no subject in the entire domain of the law has produced more contrariety of opinion than has the subject of warranty in sales of personal property. Not only have the courts differed in deciding cases, but courts and authors have often failed to discriminate between warranties and deceit, or fraudulent representations. As an illustration, it is often said, in considering the subject of express warranty, that it is not necessary that the seller should have intended by the language used to warrant the thing sold; and that, in order to create a warranty, the purchaser must be influenced by the statement alleged to constitute the warranty. Both of these propositions are correct as applied to a question of fraud, based upon a statement made by the seller; but neither is correct in determining whether or not the statement constitutes an express warranty. Such a warranty is entirely a matter of contract, and the contract which creates it must, like all other contracts, embody the mutual intentions of the parties. Nor is it necessary that the buyer must have been deceived before he can recover for the breach of an express warranty. Shordan v. Kyler, 87 Ind., 78; Harrington v. Smith, 138 Mass., 92; Smith v. Hale, 158 Mass., 182.

It seems now to be a well settled principle, that, where there is an express warranty of quality, the purchaser, though having opportunity of inspection and being aware of the defect in quality, may receive the property and recover damages for breach of the warranty, or, if sued for the purchase money of the property, may offset such damages against the contract price. Barnum Iron and Wire Works v. Seley, 8 Texas Ct. Rep., 716; Parks v. O'Connor, 70 Texas, 389; 2 Meacham on Sales, sec. 1395. The author cited says:

"The express warranty, therefore, stands upon different ground in reference to acceptance from that occupied, according to many authorities, by the implied warranty or condition; and it is well settled, where an express warranty accompanied the contract, that while, by accepting the goods, the buyer may lose his right to subsequently reject them, he does not thereby necessarily lose his right to rely upon the warranty. The express warranty survives acceptance, and, by the great weight of authority, gives the buyer a remedy, notwithstanding the defects were

visible or open to discovery at the time they were received. The buyer may reject them, but he is not compelled to do so; he may retain them and rely upon the warranty."

Although the contrary was once held, it appears now to be firmly established that an express warranty may exist in connection with an executory contract. 2 Mecham on Sales, sec. 1394; Day v. Poole, 52 N. Y., 416; Briggs v. Hilton, 99 N. Y., 517; Fairbank Canning Co. v. Metzger, 118 N. Y., 260; Polhemus v. Heiman, 45 Cal., 573.

Counsel for appellant contends that the language of the contract, "said cane to be sound, ripe and merchantable," imports an express warranty by appellee. On the other hand it is contended, and we presume the trial court held, that the language referred to was not intended as a warranty. "A warranty is an express or implied agreement, collateral but annexed to the agreement to transfer the title, by which the seller undertakes to vouch for the title, quality or condition of the thing sold." 2 Mecham on Sales, sec. 1222. And the authorities all agree that it is not necessary that the word "warranty" be used to create an express warranty.

A warranty is to be distinguished from mere representation or expression of opinion; and in many cases it may be difficult to determine whether or not the language in question should be held to constitute a warranty, or merely an expression of opinion. But such difficulty is not encountered in cases like the one at bar. The language that we are now dealing with was not a mere verbal statement, made by the seller while the parties were negotiating, and concerning the quality of something then in existence. It was incorporated into a written contract of sale, and it referred to something that had no existence at that time. When parties are negotiating concerning the sale of property then in existence, words of commendation by the seller may properly be held as merely expressions of opinion; but when a written contract is made for the sale of an article not yet in existence, and it is stipulated that it shall be of a particular quality, it would be unreasonable to hold that such stipulation was intended merely as expressing the seller's opinion as to what would be the quality of the article when it was manufactured or produced. Such a stipulation signifies a promise on the part of the seller that the article shall be of the quality named.

In some cases it is said that such language is descriptive of the thing sold and not a warranty, but in the case at bar, the first section of the contract describes the property sold as "the entire crop of cane to be grown by him on said Klondyke plantation for and during the period of four years, beginning, as aforesaid, on the first day of January, 1900, and ending with the last day of December, 1904." Then, after fixing the price to be paid for the cane, it reads: "And the party of the first part is to cultivate all cane in a good manner and to cut, haul and deliver, cleaned as customary for cane to be cleaned for the mill; said cane to be sound, ripe and merchantable, for the price above mentioned, to the party of the second part at his mill." If nothing more had been

said in the contract, it would seem that the language, "said cane to be sound, ripe and merchantable," was not intended as limiting the amount of cane sold, because it was not inserted as a proviso in the preceding paragraph, which declared that the entire crop of cane to be grown on the Klondyke .plantation during the period of four years was thereby sold. In other words, the language referring to the quality of the cane does not appear to have been used in the sense of qualifying and limiting the amount of cane contracted to be sold, but rather as an assurance that the entire crop should possess the qualities named. But furthermore, in the second section of the contract, and following after the language referred to, is this express stipulation: "The party of the second part hereby obligates and binds himself to receive from the party of the first part all of the cane raised by him on the said 300 acres or more of land cultivated on the Klondyke place in Fort Bend County, ·Texas, for and during the period of four years from and after the first. day of January, 1900."

Now it would seem that if the language of the contract which refers to the quality of the cane was used only in a descriptive sense, and as. limiting the amount sold, that the purchaser would not thereafter and in. a subsequent section of the contract have expressly and specifically obligated himself to receive from the seller *all* the cane produced .on the. farm referred to.

It is also to be noted that at the time the contract was made the· subject matter of the sale was not in existence, and the contract required Mrs. Ellis to furnish part of the consideration, or perform part of the obligation· of the contract, before she would have an opportunity to· inspect the cane. It required her to build a tram road from her farm to and upon that of the plaintiff, and furnish him with cars with which to haul his cane to the mill.

Moreover, the contract indicates on its face that it was intended by the parties that there should be delivery of the cane before the defendant. would have opportunity to inspect and ascertain its quality. It required her to furnish the plaintiff with the necessary number of cars to harvest his cane, and, required the plaintiff to load the cane on the cars and deliver them to the defendant at her mill; and required her to unload the cars.

In the absence of an express or implied agreement as to what shall constitute delivery, the general rule is that, as between the parties. themselves, the property is delivered whenever, at the time and place which the law fixes or the parties have agreed upon, the seller has done everything which is necessary to be done in order to put the property completely and unconditionally at the disposal of the buyer. 2 Mecham on Sales, sec. 1186. In this case, according to the obvious meaning of the contract, when the plaintiff loaded the cane on the cars and carried the cars to the defendant's mill, delivery was complete, because when that was done, the plaintiff had done everything which the contract required him·to do to place the property at the absolute disposal of the

defendant. Such being the case, and there being nothing on the face of the contract, nor disclosed by the testimony, indicating that the defendant would have opportunity to examine the cane before it reached the mill, we hold that she was not required or expected to make such examination before the property was delivered.

In view of these considerations we feel constrained to hold that the language of the contract which refers to the quality of the property was used for the purpose of expressing an agreement, collateral to the contract of sale, by which agreement the seller undertook to vouch for the quality and condition of the thing sold. And, if we are correct in that conclusion, then the language referred to constitutes an express warranty, and the trial court erred in construing it otherwise, and in charging the jury that the plaintiff was entitled to recover the price stipulated in the written contract for all the cane received and used by the defendant.

The special instruction requested by the defendant on the subject of warranty was not correct, because it overlooked and eliminated the theory asserted by the plaintiff to the effect that the damaged condition of the cane was occasioned by the failure of the defendant to comply with the contract.

Counsel for appellee rely upon Parks v. O'Connor, 70 Texas, 377, and some other cases which have followed that decision. As reported, the entire contract in that case is not set out, and we do not know whether or not that case is entirely analogous to the case under consideration. In fact, that case is somewhat confusing; because, while it is stated in the opinion that the stipulation in the contract, "good merchantable cattle," does not imply a warranty, the opinion concludes with the declaration that the court erred "in giving and refusing instructions as appellants complain in the assignments under consideration;" and one of the assignments under consideration, as shown in the opinion, complains of the trial court in not charging as requested by the defendant, that the words, "good merchantable yearlings," constituted a special warranty. Furthermore, that case, if construed correctly by counsel for appellee, seems to be in conflict with Blythe v. Speake, 23 Texas, 429, and the decided weight of authority in other jurisdictions. The following cases tend to support the conclusion reached by us in this case: Fairbank Canning Co. v. Metzger, 118 N. Y., 260; Latham v. Shipley, 86 Iowa, 543; Callanan v. Brown, 33 Iowa, 333; Powell v. Chittick, 89 Iowa, 513; Reed v. Hastings, 61 Ill., 266; Shordan v. Kyler, 87 Ind., 38; Warren v. Coal Co., 83 Pa. St., 437; Holloway v. Jacoby, 120 Pa. St., 583; Groetzinger v. Kann, 165 Pa. St., 578; Polhemus v. Heiman, 45 Cal., 573; McLennan v. Ohunn, 75 Cal., 559; Lewis v. Rountree, 78 N. C., 323; Love v. Miller, 104 N. C., 582; Osgood v. Lewis, 18 Am. Dec. (Md.), 317; Jack & Towne v. Railway Co., 53 Iowa, 399; Barnes v. Burns, 81 Wis., 232; Drew v. Ellison, 60 Vt., 401; Burr v. Redhead & Co., 52 Neb., 617; Erskine v. Swanson, 45 Neb., 767; Reese v. Bates, 94 Va., 321; Money v. Fisher, 92 N. Y. (Hun), 347.

But if we are wrong in holding that the contract contains an express warranty of the quality of the property, we still think the court's charge was erroneous for the reason that the testimony does not show that the defendant had opportunity to examine the cane before she received it. As already shown, delivery was complete when the plaintiff loaded the cane on the cars and carried them to the defendant's mill; and the testimony does not indicate that the defendant had any opportunity of examination until that was done. It does show that she had such opportunity, and exercised it, before she used the cane, but not before she received it.

This being the case, if she discovered that the property was not of the quality stipulated in the contract, she was not required to demand a rescission, but could keep the property, and, as she has done, seek redress for breach of the contract, which contains at least an implied warranty of quality.

For the error pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*