FERGUSON v. JOHNSON. (No. 1368.)

(Court of Civil Appeals of Texas. Amarillo. June 5, 1918.)

1. SALES ☞446(1)—BREACH OF WARRANTY—INSTRUCTION.

In suit for breach of warranty of quality of carload of millet seed, where there was no evi-

dence as to what extent particular seed delivered by defendant was responsible for trash found in entire car, charge that verdict should be for defendant unless jury should find he agreed to sell entire carload of seed, as alleged by plaintiff, and denied, was proper.

2. APPEAL AND ERROR ☞882(12) — INVITED ERROR—REQUEST FOR INSTRUCTION.

Where an erroneous instruction, conflicting with another, was given at appellant's request, appellant cannot complain.

3. SALES ☞261(6)—"EXPRESS WARRANTY"—DESCRIPTION.

The description of millet seed contracted to be sold as "good, merchantable seed" is not properly an "express warranty," which is collateral to the contract, while a description of the quality of the goods is regarded as a part of the contract itself.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Express Warranty.]

4. SALES ☞288(2) — EXPRESS WARRANTY — DISCHARGE BY ACCEPTANCE.

An express warranty, being collateral to the agreement of sale, is not discharged by delivery and acceptance under the contract of sale, though the acceptance is made after inspection.

5. SALES ☞179(4)—DESCRIPTION—REMEDIES OF BUYER.

If goods tendered in discharge of contract of sale, merely descriptive of quality, did not meet requirements, they may be rejected and seller sued for breach of contract, but where goods are accepted after inspection or opportunity, in absence of fraud, or defect not discoverable by inspection, contract is discharged.

6. SALES ☞179(4)—REMEDIES OF BUYER—ACCEPTANCE.

Where goods are ordered by particular description, and accepted without opportunity for inspection, it is prevented by fraud, or it would not disclose any defect, the purchaser has practically the same rights as in case of a strict breach of warranty.

7. SALES ☞176(4) — SALE BY DESCRIPTION —OPPORTUNITY TO INSPECT.

A fair opportunity to inspect the property delivered under a contract of sale by particular description, in the absence of fraud, is regarded as the equivalent of inspection.

8. APPEAL AND ERROR ☞1026 — REVERSAL — HARMLESS ERROR.

Where no harm probably resulted from erroneous rulings, they do not require reversal.

Appeal from Hale County Court; Chas. Clements, Judge.

Suit by Joe Lee Ferguson against B. M. Johnson. From a judgment for defendant, plaintiff appeals. Affirmed.

Graham & Graham and Fred C. Pearce, all of Plainview, for appellant. Y. W. Holmes and W. W. Kirk, both of Plainview, for appellee.

BOYCE, J. This suit was brought by Joe Lee Ferguson, appellant, against B. M. Johnson, appellee, to recover damages for an alleged breach of warranty of the quality of a carload of millet seed alleged to have been sold by Johnson to Ferguson. It was alleged that Johnson agreed to sell and deliver to Ferguson at a specified time and place one carload of good, merchantable millet seed; that a car of said seed was delivered and paid for, but on examination prov-

ed to contain a large quantity of trash and other seeds, thus not complying with the contract. Recovery of the difference between the value of the seed as delivered and such seed as contracted for was sought. The defendant denied that he contracted or sold to Ferguson a carload of seed, but claimed that he agreed to sell him what seed he had on hand, and that two other persons also sold Ferguson seed, and that all of these sales together made the car, defendant's seed constituting about one-sixth thereof. Johnson's version of the contract was that he simply sold Ferguson the millet seed he had on hand, it being understood that "the seed would come straight from the thrasher," and that he had nothing to do with the sale of the seed by the other parties. He claimed that his seed filled the contract, though there were "some weed seed in the millet seed delivered." Evidence was offered in support of the issues thus made between the plaintiff and the defendant. We think the charge sufficiently presents the issues made as stated, and overrule the first and second assignments.

[1, 2] If the pleadings were sufficient to have sustained a recovery by plaintiff, on the theory that, if it should be found by the jury that the defendant agreed to furnish the plaintiff any quantity of good, merchantable millet seed, and the seed furnished were not of such quality, although it should be found that the contract for quantity was as claimed by defendant, the evidence was not in such condition as to warrant the submission of such issue to the jury, because the evidence as to the condition of the seed and damage thereto on account of such condition applies to the whole car, and there is no evidence from which it might be determined to what extent the particular seed delivered by defendant was responsible for the trash and foreign matter found in the entire car. So that there was no error in the charge given, to the effect that the verdict should be for the defendant unless the jury should find that the defendant agreed to sell the carload of seed as alleged by plaintiff, and we overrule the assignment complaining of this part of the main charge. Fundamental error is suggested, in that there is a conflict between this charge of the court and a special charge given at plaintiff's request, which specifically authorized the recovery on a finding that the defendant agreed to furnish any quantity of good, merchantable seed, and the seed furnished were not of such quality. This charge, under the circumstances, was erroneous; and, as it was given at the appellant's request and the error and conflict thus invited, he cannot complain. I. & G. N. Ry. Co. v. Parish, 18 Tex. Civ. App. 130, 43 S. W. 1066.

[3-7] Ferguson accepted and paid for the seed without inspection, though the evidence is sufficient to warrant the conclusion that he had a fair opportunity of inspection. No claim of failure of the seed to meet the quality provided for in the contract was made until some time afterward, when it was reported from Dallas, to which place the seed had been shipped, that they were not of such quality. The court, in this connection, instructed the jury that the plaintiff could not recover if it should be found that at the time of the delivery of the seed the plaintiff had a reasonable and fair opportunity to inspect the same before acceptance. The appellant complains of this charge, on the ground that if his theory that the contract provided for the sale and delivery of good, merchantable millet seed is correct this would constitute an express warranty that would survive acceptance and a breach of which would support recovery, although the seed had been accepted after inspection or a reasonable opportunity to inspect. We do not think this description of the quality of the millet seed contracted to be sold is properly an express warranty. Parks v. O'Conner, 70 Tex. 377, 8 S. W. 104; Jones v. George, 61 Tex. 350, 48 Am. Rep. 280; Seay v. Diller, 16 S. W. 642; Florida Club v. Hope Lumber Co., 18 Tex. Civ. App. 161, 44 S. W. 13; notes to 35 L. R. A. (N. S.) 265-270; notes to 25 L. R. A. (N. S.) 161. An express warranty is collateral to the contract, while a description of the quality of the goods contracted to be sold, "is regarded as a part of the contract of sale itself, and not as a warranty or agreement collateral to it." Dutchess Co. v. Harding, 49 N. Y. 321. In Parks v. O'Conner, supra, where the contract provided for the sale of a certain number of cattle of certain classes, "all to be good, merchantable cattle," it was held that "these words are descriptive of the cattle to be delivered, but can hardly be held to imply a warranty in its technical sense." Likewise, in the case of Florida Athletic Club v. Hope Lumber Co., supra, it was in effect held that a contract which provided for the sale of a quantity of lumber to be "No. 1, mill-run, Texas pine, of first-class quality, free from knots and shakes that would impair its strength or durability," did not import an express warranty. All the authorities agreed that there is much confusion and conflict in the numerous decisions on this subject and particularly as to the rights of purchasers accepting goods under such contracts upon subsequent discovery of the fact that they do not come up to the quality contracted for.

The authorities do agree that an express warranty, being collateral to the agreement, is not discharged by delivery and acceptance under the contract, although such acceptance is made after inspection. In such cases the goods may be accepted and suit brought for breach of the warranty of quality. But there is much conflict and confusion as to whether a particular description of the quality is to be construed as a warranty, and, even if it is not, as to what are the rights of the purchaser upon a discovery subsequent to ac-

ceptance that the quality does not conform to the specifications of the contract. Our Supreme Court seems to have recognized a rule which may be stated as follows: A contract merely descriptive of the quality of the goods to be delivered imposes, of course, an obligation on the seller to deliver goods of that description. If the goods tendered in discharge of the contract do not meet its requirements, they may be rejected and the seller sued for breach of his contract to sell and deliver the goods of the specific quality. Ordinarily, however, where the goods are accepted after inspection or opportunity to inspect, and in the absence of fraud, the contract is discharged, and the purchaser may not thereafter assert that the goods do not fulfill its terms.

There are some exceptions to this rule— where there is no opportunity of inspection, where inspection is prevented by fraud, or where the inspection would not disclose the defect, and perhaps others not necessary to here mention. In such exceptional cases the right of the purchaser, "when rescission has become impracticable, are practically the same as on breach of warranty." Jones v. George, 61 Tex. 350, 48 Am. Rep. 280; Parks v. O'Conner, supra. The latter case is authority establishing both the rule stated and the exceptions. In that case it appeared that the defendant, upon being sued for the purchase price of cattle delivered under the contract hereinbefore stated, attempted to reduce the recovery: First, because the second herd of cattle delivered was not in accordance with the terms of the contract, this defect being an apparent one (Parks v. O'Conner, supra, p. 106); and, second, because the cattle were infected by a disease not discoverable by inspection, and that by reason of this disease many of them died. Parks v. O'Conner, supra, p. 108. The two defenses were discussed separately by the court. As to the first, it was held that:

"When a purchaser, under an executory contract for the sale and delivery of personal property, inspects the same before delivery, he is estopped to set up that it is not such as the seller has agreed to deliver so far as all visible defects are concerned."

As to the second defense, the rule we have stated was applied. When we consider the two assignments which the court was considering in discussing the latter question, and remember that in the cases where the exception applies the remedy of the purchaser is the same as if the suit was on breach of warranty, the concluding language of the opinion, used in concluding the discussion of this phase of the case, which the court, in the case of Ellis v. Riddick, 34 Tex. Civ. App. 256, 78 S. W. 719, considered as confusing, does not appear to us to render uncertain the actual announcement of the law as it was intended to be made in the opinion in that case. We think a distinction may be made between the contract in the case of Parks v. O'Conner, supra, and those construed in the cases of Ellis v. Riddick, 34 Tex. Civ. App. 256, 78 S. W. 719, and other cases cited by appellant, but, if not, we should follow the decision of the Supreme Court, as the contract there considered in its description of the quality of the property agreed to be sold is practically identical with that under consideration. No good purpose would be subserved by pursuing an investigation of the authorities further, as the Supreme Court, in the case of Parks v. O'Conner, supra, which was followed in Seay v. Diller, supra, seems to have settled the rule as we have stated it, which rule is regarded by many authorities as being sound in reason and principle. Mechem on Sales, § 1391; Jones v. McEwan, 91 Ky. 373, 16 S. W. 81, 12 L. R. A. 399. A fair opportunity to inspect the property delivered under the contract of sale is, in the absence of fraud, regarded as the equivalent of inspection. Fay Fruit Co. v. Talerico, 26 Tex. Civ. App. 491, 63 S. W. 657; Springfield Shingle Co. v. Edgecomb Mill Co., 52 Wash. 620, 101 Pac. 233, 35 L. R. A. (N. S.) 277; Jones v. McEwan, supra. We conclude, therefore, that there was no error in the instruction complained of by this assignment.

[8] The record does not show that harm probably resulted from the rulings complained of by the sixth and seventh assignments, and, even if they were erroneous, which we do not hold, they would not require a reversal of the case.

Affirmed.

HUFF, C. J., not sitting, being absent in Austin, sitting with Committee of Judges.

---

⊕⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes